Topolsky, et al. v. Bailey Fuel Company.

(Decided December 14, 1926.)

Appeal from Pike Circuit Court.

Mines and Minerals—Deed to Mineral Rights Held to Authorize Purchaser from Grantee to Haul Coal from Other Lands Over Surface.—Deed to mineral rights, conveying right to convey coal from any other tracts then owned or thereafter acquired by grantee or assigns, held to authorize purchaser from grantee to haul coal and supplies from other lands over land conveyed, as against purchaser from grantor with notice.

W. G. W. RIDDLE for appellants.

HARMAN, FRANCIS & HOBSON for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On August 15, 1903, Parlee Riddle and W. G. W. Riddle entered into a written contract by which they sold to W. G. Newingham, William Leckie and Charles S. Thorne all the coal in a certain 45 acre tract of land lying in Pike county on Pond creek and the waters of Tug fork of the Big Sandy river. The contract provided for an accurate survey of the land, and the material provisions of the contract are as follows:

"Said surveyor shall carefully and accurately survey in a solid block from the 26.48 acre tract of John Rutherford and the 196.48 acre tract so much of said tract of land as does not include about five (5) acres of bottom land. The said 5 acres of land to be carefully surveyed and platted and excepted out of any conveyance hereafter made.

"And the parties of the first part covenant and bind themselves to convey also to said parties of the second part in said deed such rights of ingress and egress in, on and under and over so much of said tract of land as does not include said 5 acres above mentioned, as they may desire, and also the right to construct, maintain and operate over and upon so much of the said tract of land as does not include said 5 acres, all necessary and proper wagon-ways, roadways, tramways, and railroads; and also the right to erect, construct and maintain all necessary and proper buildings, outhouses, tipples, storehouses, air

shafts, bore holes and coke ovens, and such other building or improvements as may be necessary or proper for the convenient and suitable mining and removing of the coal on said tract of land, and also the right to use all timber ten (10) inches and down, measured one foot from the ground outside of the bark, water, sand and stone necessary for or convenient in the mining, removing, coking, shipping and extracting said coal. The said parties of the first part also covenant and bind themselves to convey also to said parties of the second part or to whomsoever they may direct the right to convey as they may desire, over and under the said property, any coal from any adjoining, adjacent or contiguous tract of land, and also the right to place *debris* and other trash resulting from the mining operations on so much of said lands as does not include said 5 acres. Said parties of the first part bind themselves to release and discharge the said parties of the second part, their heirs, executors and assigns, from any and all claims or demands to damage, whatsoever to the surface of so much of said portion of said tract as does not include said 5 acres. Said parties of the first part bind themselves to release and discharge the said parties of the second part, their heirs, executors and assigns, from any and all claims or demands to damage, whatsoever to the surface of so much of said portion of said tract as does not include said 5 acres resulting from mining operations.

"It is the intention of the parties of the first part to sell the coal in, on and under a solid strip of that part of the tract of land upon which they now reside which will connect the 26.48 acre tract of John Rutherford with the 196.48 acre tract of said John Rutherford. And the surveyor, in making the survey, is directed to so survey the same."

The land was then surveyed and on September 15, 1903, the Riddles carried out the contract by conveying to the purchasers the coal in all the land except the five acres of bottom land. Among other provisions of the deed are the following:

"And the said parties of the first part do further grant, bargain, sell, convey, *eneoff*, transfer unto their heirs, successors and assigns forever such

rights of ingress and egress as may be at any time necessary, convenient or desired by the parties of the second part for suitable, proper and convenient mining and removing of said coal and any business connected therewith; and also the right to construct, erect, maintain, and operate over and upon said tract of land all necessary and proper wagon-ways, tram-road ways and railroads; and also, the right to construct, erect, maintain and operate all necessary and proper buildings, outhouses, tipples, storehouses, airshafts, boreholes, coke ovens, and such other buildings and improvements as may be necessary for the convenient and suitable mining and removing of said coal; and also, the right to use all timber (14) inches and under measured one foot from the ground, and all water, sand and stone necessary for or convenient in the mining, removing, coking and extraction of said coal.

"The said parties of the first part do also grant, bargain, sell, convey, assign and transfer unto the said parties of second part, their heirs, successors, and assigns forever the right to convey, as they may desire, over or under the said property any coal from adjoining, adjacent or contiguous tracts of land or any other tracts of land now owned or hereafter acquired by the said parties of the second part, their heirs or assigns, and also the right to place *debris* and other trash resulting from mining operations on said tract of land.

"The said parties of the first part do release and forever discharge the said parties of the second part, their heirs, executors, successors, and assigns from any and all claims or demands for damages whatsoever to the surface of any portion of said tract resulting from mining operations.

"It is expressly understood that the rights of ingress and egress herein before granted, shall apply only to the tract of land in this deed set out, and that the said parties of the second part shall not have such rights over any other lands now owned by the said parties of the first part. And the said parties of the first part do covenant to and with the said parties of the second part then they will warrant generally the title to the coal in, on and under said tract of land; that they have a good right to convey

the same, and that the said parties of the second part shall have quiet possession of the same free from incumbrances, and that they have done no act to incumber the same.''

The mining rights conveyed by the foregoing deed were afterwards acquired by the Bailey Fuel Company.

On February 29, 1924, Parlee Riddle and her husband conveyed to Stanley Topolsky and Bessie Topolsky a small tract of land about 60 feet wide and 250 or 300 feet in length. A portion of this tract is embraced in the five acres of bottom land excluded from the deed which the Riddles executed to Newingham and others, and the remainder of the strip, which is about 150 feet in length, lies on the hillside and is covered by the deed. After their purchase the Topolskys placed a wire fence across that part of the land embraced in the mineral deed and over which the Bailey Fuel Company had been exercising its rights under the deed.

Proceeding on the theory that the mineral deed under which the Bailey Fuel Company acquired title did not confer on it the right to use any portion of their lot for the purpose of mining coal from other tracts than that conveyed in the mineral deed, the Topolskys brought this action for damages and to enjoin such operations. The cause was referred to a special commissioner, who reported that the Bailey Fuel Company in making use of that portion of the Topolsky lot covered by the mineral deed was acting within its rights, and was not liable for damages. On final hearing the exceptions to the commissioner's report were overruled, and the petition dismissed. Plaintiffs have appealed.

This is not a case where the lease or deed is silent as to the right of the lessee or grantee to use the surface for the purpose of mining the mineral from adjacent tracts. The deed made pursuant to the contract of sale sells and conveys unto the parties of the second part, their heirs, successors and assigns forever, ''the right to convey as they may desire over or under the said property any coal from adjoining, adjacent or contiguous tracts of land, or any other tracts of land now owned or hereafter acquired by the said parties of the second part, their heirs or assigns, and also the right to place *debris,* and other trash resulting from said mining operations on said land.'' Not only so, but it goes further and provides that the parties of the first part do release and

forever discharge the said parties of the second part, their heirs, successors and assigns from any and all claims or demands for damages whatsoever to the surface of any portion of said tract resulting from said mining operations. This language is broad and comprehensive, and there is no escape from the conclusion that appellee did not place on appellants' land an unauthorized burden when it undertook to haul its coal and supplies over that portion covered by the mineral deed, or to use it for the purpose of depositing *debris* thereon.

It is not contended that appellants were innocent purchasers. On the contrary, they purchased with actual and constructive notice of apppellee's rights in that portion of the lot covered by the mineral deed.

Judgment affirmed.