# Richmond

### LESTER COAL CORPORATION v. RUBY ELLEN LESTER.

November 27, 1961.

Record No. 5333.

Present, All the Justices.

*C. H. Combs* and *H. Claude Pobst* (*Combs, Combs & Street; Pobst & Coleman,* on brief), for the plaintiff in error.

*George C. Sutherland* (*S. H. & George C. Sutherland,* on brief), for the defendant in error.

Carrico, J., delivered the opinion of the court.

Ruby Ellen Lester, hereinafter referred to as the plaintiff, filed a motion for judgment against Lester Coal Corporation, hereinafter referred to as the defendant, to recover for the alleged unlawful hauling of coal by the defendant across the plaintiff's land.

The evidence was stipulated, was considered by the trial court without a jury by consent of the parties, and a final judgment was entered in favor of the plaintiff in the sum of $688.87. From this finding we granted the defendant a writ of error.

The facts, as stipulated, show that in 1903 David J. Smith, and others, hereinafter referred to as Smith, owned a tract of land containing 122.70 acres, hereinafter referred to as the Smith tract, in Buchanan County. By deed dated September 22, 1903, Smith conveyed to the Northern Coal and Coke Company, a corporation, hereinafter referred to as Northern, all of the coal and minerals "in, on or under" the 122.70 acre tract. This deed also granted certain rights and privileges which will be more fully described later.

By mesne conveyances, The National Shawmut Bank of Boston, hereinafter referred to as the bank, became the owner of the coal, minerals and mining rights on the Smith tract.

On November 9, 1955, the bank, by deed, leased to Russell Lester and Mack Lester, partners, now incoporated as Lester Coal Corporation, the defendant, ten tracts of land, including the Smith tract, for the purpose of mining and removing therefrom the mineable and merchantable coal outcropping "above water level at the mouth of Pounding Mill Branch of Knox Creek." The lease was for a period of

five years, but provided that if the lessees did not mine and remove all of the coal on the leased premises within that time, then the lease would automatically be extended until all of the mineable and merchantable coal had been removed.

The defendant, by written agreement dated October 27, 1958, leased from W. M. Ritter Lumber Company the coal on a 226.58 acre tract of land, hereinafter referred to as the Ritter tract, which adjoins the Smith tract. Neither the Ritter tract nor the coal thereon, was ever owned by Northern or by the bank.

The plaintiff, by mesne conveyances, has become the owner of the surface of a 20 acre parcel of land which is a part of the Smith tract.

In its operations, the defendant commenced mining coal from the Smith tract. When it reached the property line between the Smith and Ritter tracts, it removed coal from the Ritter tract and hauled it over the plaintiff's 20 acre parcel to the public highway. It is the hauling of the Ritter coal across the plaintiff's land which gave rise to the present litigation.

The defendant contends that since it has leased the coal on the Smith tract it has succeeded to the rights and privileges granted in the deed from Smith to Northern, and therefore has the right to haul coal mined from the Ritter tract across the plaintiff's surface land. The plaintiff, on the other hand, contends that the rights granted to Northern by Smith were merely personal to Northern and could not be transferred or assigned to the defendant, since Northern never owned the Ritter tract. The plaintiff also argues that the defendant is not a successor or assign of Northern or the bank, since it holds only a lease of the coal on the Smith tract.

The learned trial judge, in a written opinion, held that the easement granted in the deed from Smith to Northern was personal to Northern and was not transferred, as to other land not owned by Northern, when Northern conveyed the coal on the Smith tract. He stated that although Northern could, by acquiring other coal lands, enlarge and extend its use of the easement, yet this right of extension did not pass to the defendant to include land which had not been owned by Northern. He held that since Northern had not owned the Ritter tract the defendant was not entitled to haul coal from that tract across the plaintiff's land.

We do not agree with this construction placed upon the easement by the trial court.

The disposition of this case requires that we consider fully the rights

and privileges granted in the deed from Smith to Northern. The crucial language of the easement is as follows:

"* * * [A]nd the right to use said land for removal or storage of the products taken out of any other land owned, or hereafter acquired by party of the second part, its successors or assigns by lease or otherwise;"

In addition, the following language is found in the deed:

"* * * [A]nd the exclusive rights of way for any and all railroads, tramroads, haul roads and other ways, pipe lines, telephone and telegragh lines that may hereafter be located on said land by the parties of the first part, their heirs, representatives or assigns, or by the party of the second part, its successors or assigns, or by any person or corporation with or without the authority of either of said parties, their, or its, heirs, representatives, successors or assigns; and also the right to maintain, keep in repair and operate the same and said railroads, tramroads, haulroads, ways, pipe lines, telephone and telegraph lines;"

\* \* \* \*

"* * * [A]nd the right to thereupon convert, reduce, refine, store, dump and manufacture the said property or products, in, upon, or under said land, or other land owned, or hereafter acquired by said party of the second part, its successors or assigns, by purchase, lease or otherwise;"

\* \* \* \*

"And in the use and occupation of said land and surface thereof in any and all manner hereunder, in the exercise of the rights and privileges herein bargained, sold, granted or conveyed or any or all of them, by the party of the second part, its successors and assigns, it said party of the second part, its successors and assigns shall be free from, and it and they are hereby released from, any and all liability or claim of damage to the said parties of the first part, their heirs, representatives and assigns, occasioned by or resulting directly or indirectly from such use or occupation, or the exercise of said rights or privileges, or any or all of them.

\* \* \* \*

"Parties of the first part also hereby grant, bargain, sell and convey unto the said party of the second part, its successors and assigns, the free right of ingress, egress and regress in, on, to, over, upon, under and through said land hereinafter described for all purposes hereunder, and for the purpose of fully exercising and enjoying any and all property, rights and privileges hereby bargained, granted, sold or conveyed; and

it said party of the second part, its successors and assigns, to have un-limited time in which to do so, and shall not be limited to commence the exercise or enjoyment of all or any of said property, rights and privileges at any particular or reasonable time;"

\* \* \* \*

"To have and to hold the same, and all the rights, privileges, ease-ments and emoluments herein bargained, sold, granted and conveyed, and all the privileges and appurtenances thereunto belonging unto the said party of the second part, its successors and assigns forever."

In addition to the above rights Smith convenanted with Northern, its successors and assigns, as follows:

"That the party of the second part, its successors and assigns, shall quietly enjoy the said property, rights and privileges."

In the deed of lease from the bank, now held by the defendant, the lessees were granted:

"[A]ll and every right, right of way, privilege, easement and im-munity owned by lessor or to which it may be entitled in connection with and as incident to the demised premises and none other."

As related to the question before us, there are two classes of easements. The first is known as a pure easement, or an easement ap-purtenant, which has both a dominant and a servient estate, and which is capable of being transferred and inherited. Such an easement passes with the land to which it is appurtenant. *Scott* v. *Moore*, 98 Va. 668, 675, 37 S. E. 342, 344; 17A Am. Jur., Easements, § 9, p. 624.

The other class is termed an easement in gross, sometimes called a personal easement, which is not appurtenant to any estate in land, but in which the servitude is imposed upon land with the benefit thereof running to an individual. Such an easement cannot be transferred by the individual to whom it is originally given, nor can it pass by in-heritance. *Stokes, Inc.* v. *Matney*, 194 Va. 339, 344, 73 S. E. 2d 269, 271; 6 Mich. Jur., Easements, § 5, p. 470; 17A Am. Jur., Easements, § 10, p. 625.

Thus, the distinguishing feature between these two classes of ease-ments is that in the first there is, and in the second there is not, a dominant tenement. 17A Am. Jur., Easements, § 11, p. 626.

The courts, in construing language granting an easement, seek to hold that the easement is appurtenant to land, if such can be fairly done. An easement is never presumed to be merely personal, and it will not be held to be in gross, unless it plainly appears that the parties so in-tended. *French* v. *Williams*, 82 Va. 462, 468, 4 S. E. 591; 17A Am. Jur., Easements, § 12, p. 627.

An easement is appurtenant to land, and therefore not merely personal or gross, "if it be in its nature an appropriate and useful adjunct of the land conveyed, having in view the intention of the grantee as to its use, and there being nothing to show that the parties intended it to be a mere personal right. . . ." *Smith* v. *Garbe*, 86 Neb. 91, 124 N.W. 921, 923; 6 Mich. Jur., Easements, § 4, p. 469.

It is the intent of the parties, therefore, as gathered from the language of the easement itself, considered in the light of the surrounding circumstances, if there be doubt as to the meaning of the language, that controls a determination as to whether an easement is appurtenant or gross. *Hardy* v. *McCullough*, 23 Gratt. (64 Va.) 251, 260; *Stephen Putney Co.* v. *R. F. & P. R. Co.*, 116 Va. 211, 217, 81 S. E. 93, 96; *Post* v. *Bailey*, 110 W. Va. 504, 159 S. E. 524, 525.

Of course, if the language used attempts to create a right which may violate an established rule of property law, or purports to grant something which, in law, may not be granted, then effect cannot be given to the language, plain though it may be. *Tardy* v. *Creasy*, 81 Va. 553, 562. In the easement granted in the deed from Smith to Northern, we find nothing which does injustice to this principle.

■ Considering, as we must, all of the provisions of the deed as they relate to the nature of the easement, we find that the parties clearly intended that coal was to be moved across the surface of the Smith tract, not only from that tract, but from other tracts as well. This being true, and considering that the Smith tract contained only 122.70 acres, it is clear that the parties intended that the mining operations on the Smith tract were to take place in connection with similar operations on other coal lands; that they recognized that the use of the surface of the Smith tract was vital to these combined mining operations, and was a part of the bargain for the sale and purchase of the Smith coal; that they intended that the right to the use of the surface was to be enjoyed by Northern, its successors or assigns, in moving coal mined from the Smith tract and, in connection therewith, from other tracts then owned by Northern or later acquired by Northern, or by its successors or assigns.

Such being the case, the easement granted by Smith to Northern is in its nature an appropriate and useful adjunct of the estate conveyed, that is, the coal on the Smith tract. It is reasonably necessary to the enjoyment of the conveyance of the Smith coal that the owner thereof should also have the right to move across the surface of that tract the coal removed from other land.

We find nothing in the language of the deed, expressly or inferentially, which indicates that the parties intended that the rights granted should be merely personal to Northern. There is no reason, in law, why the owner of land may not grant an easement appurtenant to an estate conveyed by him, and provide that the easement shall become appurtenant to other land then owned, or later acquired, by the grantee or those succeeding him in the ownership of the estate conveyed. *Jones* v. *Island Creek Coal Co.,* 79 W. Va. 532, 91 S. E. 391, 393, 394; *Harper* v. *Jones,* (Ohio) 74 N. E. 2d 397, 400; *Topolsky* v. *Bailey Fuel Co.,* 217 Ky. 144, 289 S. W. 207, 208; 48 A.L.R. 1418.

We hold that the easement under consideration is an easement appurtenant, the servient estate being the surface of the Smith tract and the dominant tenement being the coal on the Smith tract and other coal lands owned by Northern or thereafter acquired by Northern or by those succeeding Northern in the owenrship of the coal on the Smith tract. Being appurtenant, and not merely personal, this easement was capable of being, and was in fact, transferred by Northern when it conveyed the basic dominant tenement, the coal on the Smith tract.

■ But, as has been noted, the plaintiff contends that the defendant, being a mere lessee of the coal on the Smith tract, is not a successor or assign of Northern, and cannot therefore, even if it could otherwise, assert the right to use the easement.

This contention is without merit.

The deed from Smith to Northern conferred the enjoyment of the rights therein conveyed upon the grantee, "its successors or assigns by purchase, lease or otherwise." It is conceded that the bank is the successor or assign of Northern. The bank has leased to the defendant all of the coal outcropping above water level, with the right to remove such coal, even to the exclusion of the lessor. The lease grants to the defendant all of the rights and privileges owned by the bank in connection with the leased premises. Thus, the defendant, for all intents and purposes, is a successor or assign of the bank and falls within that class recognized by the deed as being entitled to the enjoyment of the benefits therein bestowed. It may exercise such rights as Northern or the bank could have exercised had they not disposed of the coal, but had themselves engaged in the mining thereof.

When the coal on the Smith tract, with the easement appurtenant thereto, and the coal on the Ritter tract converged in the same lessee, that is, the defendant, then the easement also became appurtenant to

the coal on the Ritter tract. This is the plain and expressed intent of the language of the deed. Any other holding must fail to give effect to words that permit of no ambiguity.

The plaintiff argues in her brief that our decision in this case should be controlled by the case of *Stokes, Inc.* v. *Matney, supra*. In fact, the *Stokes* case was the pivotal consideration for the ruling of the trial judge in this case.

In the *Stokes* case, Fulton Matney, the owner of 160.84 acres, designated the Matney tract, conveyed the coal and minerals thereon to C. L. Ritter Lumber Company, with the right to haul over the tract the coal removed therefrom and from "any other lands," all rights granted to run forever and be appurtenant to the coal on the Matney tract and on any other lands owned or thereafter acquired by Ritter, its successors or assigns.

Thereafter, Ritter leased to Stokes the coal owned by it on eleven tracts of land, but which did not include the coal on the Matney tract. Ritter also undertook to convey to Stokes the right to haul, across the Matney tract, coal which had been mined or removed from the tracts leased by Ritter to Stokes, and from "any other lands whatsoever in Buchanan County, Virginia." Stokes acquired from other parties the coal on the Kroll and Slocum tracts and hauled the coal from these two tracts across the Matney tract. The owner of the Matney tract brought action to recover damages for this use of his land, and a recovery in his favor was upheld by this court.

We said, speaking through Mr. Justice Whittle, that the easement therein involved was "appurtenant to the coal on the Matney tract and to coal owned by Ritter or thereafter acquired by Ritter or by Ritter's successors or assigns in title." We held, however, that the easement was not appurtenant to the Slocum and Kroll tracts, which Ritter had never owned, and that Stokes was not entitled to haul across the Matney tract the coal mined from those tracts.

We reaffirm what we said concerning the easement in the Stokes case. But there is a decisive and controlling difference between the factual situation in that case and in the case at bar. In the *Stokes* case, Ritter, who owned both the coal on the Matney tract and the easement over its surface, attempted to convey only the easement to Stokes, retaining ownership of the coal. In the case before us, the defendant, who seeks to exercise the easement, has leased both the coal on, and the easement over the surface of, the Smith tract.

The basis of our holding in the *Stokes* case was that because Ritter

did not convey to Stokes the basic dominant estate, that is, the Matney coal, and since Ritter had never owned the Slocum and Kroll tracts, Stokes could not be a successor or assign of Ritter in either case. Stokes was, therefore, not entitled to enjoy or extend the use of an easement right which could not be severed from the dominant estate in the first place.

We are of the opinion that the defendant's hauling of the coal from the Ritter tract across the plaintiff's land was clearly within the easement rights held by the defendant, and not, therefore, unlawful.

Accordingly, the judgment complained of is reversed and a final judgment will be entered in favor of the defendant.

*Reversed and final judgment.*