## Miller, et al. v. Powers, et al.

(Decided May 27, 1919.)

## Appeal from Wayne Circuit Court.

1. Adverse Possession—Title from Commonwealth.—Where all litigants claim title to the land in controversy under a common source, it is unnecessary for the plaintiff to trace the title from the Commonwealth to the common source.

2. Taxation—Tax Deeds—Title—Burden of Proof.—While a tax deed is prima facie evidence of title in the grantee and his privies, yet when such deed is attacked for irregularities appearing upon its face or in the tax sale leading up to it, and these irregularities are confessed or made to appear, the burden shifts to the grantee and his privies in the deed to sustain the deed.

3. Taxation—Tax Deeds—Defective Deeds.—The following are such irregularities as will vitiate a tax deed: Failure to file an affidavit in writing, as required by section 4151, Kentucky Statutes, before amended in 1908; sale for more than the true amount of taxes, penalties and cost due; failure to give the notice required by sections 4153 and 4156, Kentucky Statutes; failure of the sheriff to mail to the taxpayer a post card 15 days before sale as per section 4149 There are other steps which are also essential.

4. Adverse Possession—Joint Tenants.—One joint tenant can not acquire title by adverse possession to the whole estate except by such acts or conduct as will amount to a disseizin of his fellows and bring knowledge to them of his purpose and intention to hold and claim in severalty.

5. Taxation—Limitation of Actions.—The five year statute of limitations contained in subsections 2515 and 2519, Kentucky Statutes, has no application to the tax deed under consideration.

6. Taxation—Tax Deeds.—A tax deed which is void for irregularities confers no title upon the grantee and he would acquire no title by holding under it until the lapse of the 15-year period.

7. Joint Tenancy—Lease—Oils—Royalties.—Where one joint owner leases the common property for oil and gas, and the lessee enters on the premises, sinks wells, develops the property, both the grantor in the lease and the lessee who takes and appropriates the minerals from the land are responsible to the outstanding co-tenants for the reasonable value of their share of such minerals in place, and the lessor in this case is responsible for the fair and reasonable rental value of two-fifths of all royalties which he has received from oil or other minerals.

8. Joint Tenancy—Minerals—Division of Proceeds.—Where lands are chiefly valuable for minerals beneath the surface, and it is impossible to divide the lands in kind according to their value for mineral products, the only resort is to sell the whole of the

property and divide the proceeds among the several owners as their interests appear.

HENRY C. GILLIS and O. B. BERTRAM for appellants.

DUNCAN & BELL for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

This action, by Bell Miller, &c., claiming to be the owners, as heirs of W. P. Goodin, of a two-fifth undivided interest in a 50 acre tract of land on Little South Fork of Cumberland river, was instituted in the Wayne circuit court in August, 1914, against M. W. Powers, &c., for a sale of said land and a division of the proceeds as well as an accounting for rents and profits among the joint owners, as their interests appear, on the averments that the lands are not susceptible of division in kind, and that each interest will be worth less than $100.00. All parties to the action claim the land under W. P. Goodin who died intestate as to this tract in 1864. He left surviving seven children, two of whom shortly thereafter died intestate and childless.

Each of the five remaining children was entitled to a one-fifth interest in the 50 acre tract of land in controversy. Elizabeth Campbell, a daughter, occupied the lands as a home for many years and up to about 1903, when the house was destroyed by fire, and Mrs. Campbell moved elsewhere. Appellants insist that Mrs. Campbell, a joint tenant, was occupying, holding and claiming said land for herself and her brothers and sisters, but appellees assert that she was claiming it in severalty adversely to her cotenants, and that her claim and possession amounted to a disseizin which vested title in her by adverse possession many years before the commencement of this action. While Mrs. Campbell was residing upon the land it was assessed for taxation in the name of the Goodin heirs for the years 1893 and 1894, and these taxes being unpaid the sheriff sold the 50 acre tract of land in January, 1895, to satisfy the taxes, seventy-five cents, and cost, $2.92, at which tax sale J. M. Dodson became the purchaser. It is alleged that Dodson afterwards transferred his bid and purchase to Emily Bell, a daughter of Mrs. Campbell, and granddaughter of W. P. Goodin. In June, 1898, the sheriff executed, acknowledged and delivered to Emily Bell a deed for

this tract of land. At this time Mrs. Campbell resided upon the land, holding and claiming it either in severalty or for herself and the other heirs of Goodin. None of the other Goodin heirs lived in Wayne county at that time, but some of them lived in Whitley county, Kentucky, and others in distant states. After the house was burned and Mrs. Campbell moved from the land, Emily Bell, claiming under the tax deed, in February, 1904, sold and conveyed said land to Joseph Troxell, and Troxell immediately moved upon the place, took possession, cleared some land, put out an orchard and built a new house. In 1905, Troxell sold the land to appellee Powers, and Powers leased the land for several succeeding years to Troxell, and Troxell continued to live there until 1910. Thereafter Powers let the land to other tenants and was in the actual possession thereof at the institution of this action in 1914.

The answer of appellees contained a traverse, and in a second paragraph asserted title in appellee Powers under the tax deed of January, 1895. The third paragraph presented the fifteen year statute of limitations as a bar to appellants' right of recovery. The fourth paragraph avers that more than five years had elapsed since the taxes on the lands became in arrears, and that more than five years had elapsed since the execution and delivery of the sheriff's deed on the 20th of July, 1898, and the filing of plaintiffs' petition, and reliance is had upon the five year statute of limitation as a bar to plaintiff's right to recover. By the fifth paragraph of the answer appellees alleged that Elizabeth Campbell, one of the Goodin heirs, conveyed her interest in the lands in controversy to M. W. Powers before the commencement of this action, and that she had, by adverse possession for fifteen years, acquired title to the whole tract, and this was offered as a bar to plaintiffs' proceeding.

By reply the appellants admitted that the lands in controversy descended from W. P. Goodin and that the same had been assessed for taxation for the years 1893 and 1894 in the name of his heirs, and that the taxes on said property for said years was seventy-five cents, and that the property was sold for taxes by the sheriff in January, 1905, and that Dodson became the purchaser at the tax sale, but they averred that at the time the property was sold for taxes Elizabeth Campbell, who is one of the children and heirs at law of Goodin, resided upon said

land, and that the sheriff knew this fact at the time and before he sold said land, and that certain other heirs of Goodin resided in Whitley county, Kentucky, at the time and long before said sale, and this fact was known to the sheriff, and that the sheriff knew the post office address of these and various other heirs and owners of the land in controversy, but that the sheriff did not give to either of said claimants, or any one, notice of the sale of said land, as required by the statutes; that the taxes, and cost on said land for the years 1893 and 1894 amounted to $2.92, but that the sheriff did not, within thirty days, or at all, give to said Dodson, or any one for him, a certificate of purchase describing the lands and stating the time of sale and the price at which said land sold, and that said Dodson nor any one claiming under him ever at any time or at all gave appellants, or either of them, or any one under or through whom they, or either of them, claim, written notice of Dodson's purchase as provided by the statute. They also denied that Dodson transferred his bid to Emily Bell. The plea of limitation offered by the defendants was traversed.

Evidence was taken in support of the issues and the case being submitted, the trial court dismissed appellants' petition and adjudged Powers the exclusive owner of the land, and appelants, Miller, etc., prosecute this appeal.

Each party recognizes W. P. Goodin as the common source of title. Appellee Powers claims title under Goodin in two ways, (1) by tax deed; (2) by adverse possession. The appellants claim title as the heirs at law of Goodin, and it is conceded that the title to the tract of land in controversy was at one time in appellants and their co-tenants. Appellants contend that the tax deed under which appellee Powers claims is and was void for the following reasons:

"1. To make and file in the county clerk's office an affidavit in writing, showing the persons from whom taxes are due have no personal property out of which said taxes can be made, and that the sale was void unless this affidavit was made and filed.

"2. Where the sale is made for more than the true amount of taxes, penalty and costs due, the sale is void.

"3. The giving of the notice required by secs. 4153 and 4156 by the purchaser to the landowners was omitted.

"4. The failure of the sheriff to present receipt to and demand payment of taxes from taxpayer before levy or sale.

"5. The failure of the sheriff to mail to the taxpayers a postal card 15 days before sale giving notice of time and place of sale."

They rest their right to prevail over the tax deed under which Powers claims on the broad proposition that the failure of the sheriff who made the sale, and the purchaser at the sale to comply with each and all essential steps prescribed by law, renders the sale void, and they cite Jones v. Miracle, 93 Ky. 683; Smith v. Ryan, 88 Ky. 636; Durrett v. Stewart, 88 Ky. 665, in support of their contention. They say that Powers' claim of adverse possession is wholly without merit, because not sustained by the evidence in that Mrs. Campbell, a joint tenant, did not hold or claim the land adversely to her joint owners but only for herself and them together, and that Powers and those under whom he claims have only had actual possession of the land since 1904, practically 10 years before the commencement of this action, and therefore not sufficient to bar appellants' right of recovery.

The chief contention of appellees is that a tax deed is *prima facie* evidence of title in the grantee and can only be successfully attacked by the former owner by showing fraud or mistake or a failure to comply with the statutory requirements in the making of such sale and deed, and this can only be done within five years from the discovery of such mistake or fraud, and in no event more than ten years from the commission thereof, and since appellee Powers has held and claimed the land under his tax title of record for more than ten years next before the institution of this action, appellants' right was barred and tolled. Appellees insist that a deed can not be attacked for fraud or mistake after the lapse of ten years, and that a tax deed is no exception.

(1) A deed void *ab initio* confers no title whatever upon the grantee and in a suit where one relies upon it, may be used for the purpose only of showing extent of possession, if adverse possession is relied upon.

A tax deed does not confer title on the grantee if the proceedings by the sheriff, clerk of the county court, and purchaser which lead up to the deed were irregular, and essential steps were omitted. Such deed may be attacked at any time because it is void. This may be

done by the owner affirmatively pleading the essential steps omitted, and if such allegation is sustained by the evidence, judgment should go awarding the land to the original owner subject to a lien of the grantee in the tax deed for the amount of the taxes, interest, penalties and cost, paid by him.

In the case under consideration no affidavit in writing was filed in the office of the clerk of the Wayne county court, showing that the heirs of W. P. Goodin, from whom the taxes were due, had no personal property for the years 1893 and 1894, out of which the taxes could have been made. Such affidavit was held to be an essential step in a tax proceding in Leszinsky v. Le Grand, 119 Ky. 313. In the case of Crab Orchard Banking Co. v. Sanders, 174 Ky. 68, and in Morse v. Duryea, 174 Ky. 247, it is held that the notice required by sections 4153 and 4156, Kentucky Statutes, must be given by the purchaser of land at the tax sale to the owner in order to entitle the purchaser to deed after the expiration of the redemption period, and where such notice is not given within the time, the sale is invalid and the sheriff's deed does not confer title. So also is the failure of the sheriff to mail to the taxpayer a post card 15 days before sale giving notice of the time and place of the sale for taxes due upon real property, is an essential step which, if omitted, renders the sale as well as the tax deed ineffectual except to impress the property sold with a lien for the amount of the taxes, interest, penalties and cost in favor of the purchaser.

Each of the foregoing essential steps was omitted in the proceeding leading up to the tax deed. There appears to have been other irregularities in the sale and conveyance, but either one of those referred to is sufficient to support appellants' contention that the tax deed under which appellee Powers claims, is invalid and does not confer title but only a lien for the amount of taxes, interest, penalties and cost provided by the Statutes.

(2) Elizabeth Campbell resided upon the land in question for some twenty or thirty years, but during all that time she was a cotenant with appellants and others, and so far as the evidence discloses Elizabeth Campbell did not claim the land adversely to her cotenants though she did claim it as a home and had the right to occupy it as such. It is a well established rule

that one joint tenant can not acquire title by adverse possession against his cotenants by mere possession, no matter how long continued, for he has a right to occupy the premises and his occupancy thereof is not to be presumed to be hostile, but is presumed to be amicable and in harmony with his legal rights. In fact the statute of limitations will not begin to run in favor of the cotenant in possession until notice of his adverse holding is brought home to his co-owners. While this may be accomplished by acts of such notoriety and conspicuousness as would be calculated to put ordinarily prudent persons upon notice of his adverse holding, the burden is upon the claimant to show such a disseizin and notice. The evidence tends to show that Mrs. Campbell claimed her undivided interest in the land in controversy which was a part of her father's estate. As she continued to live upon, hold and claim the land for herself and joint tenants until 1904, the statutory period of fifteen years had not elapsed at the commencement of this action in 1914. In the absence of a contrary showing the presumption is that a joint tenant is holding the common property for the joint use and benefit of himself and cotenants. May v. C. & O., 184 Ky.—

The trial court should have adjudged the plaintiffs below, appellants here, the owners of and entitled to a two-fifths undivided interest in the lands in controversy, and directed a sale of the entire property subject to the oil lease and a division of the proceeds according to the rights of the joint tenants. Appellants were also entitled to an accounting for the rents and royalties arising from the oil produced and marketed from the premises.

Wherefore, the judgment is reversed with directions to enter a judgment in favor of appellants for a two-fifths undivided interest of the lands in controversy, direct a sale thereof subject to the lease and a division of the proceeds, as the interests of the parties may appear; refer the matter to the master to ascertain and report the amount and value of the oil produced and marketed from the premises, and require appellees, Powers, &c., to account to appellants for the reasonable royalties of two-fifths thereof, by such orders as may be proper and equitable. The fair value of the necessary and proper permanent and lasting improvements placed on the lands to develop them for mineral by appellees must be ascertained and allowed to those making

the outlay, from the funds arising from royalties of the whole property. The court will make such further orders as appear necessary to carry out its judgment when conformed to this opinion.

Judgment reversed.