**BIG GOOSE AND BEAVER DITCH COM-PANY, a Wyoming Corporation, J. W. Wilson, Jr., and Herbert Doenz, Appellants (Plaintiffs below),**

v.

**Oliver WALLOP, Appellee (Defendant below), The State Board of Control of the State of Wyoming, Earl Lloyd, Ben LeVasseur, Charles Lawrence, DeVere Hinckley, and David P. Miller, Members of Said Board (Defendants below).**

No. 3149.

Supreme Court of Wyoming.

June 7, 1963.

Alfred M. Pence, Laramie, and James A. Greenwood, Cheyenne, for appellants.

W. J. Wehrli, Casper, for appellee.

Before PARKER, C. J., and HARNS-BERGER, GRAY, and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

This is a suit challenging the water right of a landowner whose predecessors in interest had disposed of their stock in the company through whose ditch the original owner of the land had diverted water. Plaintiffs, on their own behalf and on behalf of the stockholders of the ditch company, filed complaint for declaratory judgment in two counts, the first seeking a holding that water could not be diverted from the East Fork of Big Goose Creek under Priority No. 28, dated August 29, 1885, issued by the state board of control, unless by a stockholder of the company, and the second asking that the court hold void the order of the board of control which allowed a change in point of diversion of the water claimed by defendant Wallop.

Plaintiffs filed a motion for summary judgment, and defendant Wallop, hereinafter referred to as defendant, filed a similar motion, combined with one to dismiss. Various answers to interrogatories, affidavits, and copies of official records were presented by the parties. The court after hearing issued judgment for defendant.

The allegations of the complaint were in essence not lengthy:

The plaintiff company on August 29, 1885, filed its claim to appropriate irrigation water from the East Fork of Big Goose Creek and after completing its diversion works sold forty shares of its capital stock, each share representing one-fortieth interest in 101.37 c.f.s. of water appropriated; one share of the stock was sold to Oser for the irrigation of 200 acres of land. Oser while a stockholder of the company submitted proof of having completed an appropriation under the water right obtained by the company; in 1957 defendant became the owner of this land but the appropriated water had been previously detached and separated therefrom. Defendant Wallop's predecessor in interest in 1952 had filed a petition before the state board of control alleging that she was the owner of the right to use 2.85 c.f.s. of water appropriated under the claim of the company; the board of control granted said petition to change the point of diversion from a point where the ditch company diverts water to a point of diversion from Cross Creek (some distance above). Her representation regarding the ownership of the water right was untrue in that she did not own an interest in the company's appropriation of August 29, 1885, Priority No. 28, and any water right to the land in question had been previously detached. The threatened unlawful diversion of the water by defendant would result in injury and damage to plaintiffs.

The facts developed by the interrogatories, affidavits, and copies of official papers are not in serious dispute except as to their interpretation. Plaintiffs admit that defendant is the owner of the land here in issue, and defendant concedes that his predecessors in interest had sold their share of the stock in the ditch company before the land passed to him and further that some of the instruments by which title had passed to him had not specifically mentioned water rights. Basically, the dispute concerns in whom the water right vested and whether it remained appurtenant to the Oser land after subsequent owners sold their stock in the ditch company.

Counsel say that the ditch company complied with territorial laws of Wyoming. Some of the pertinent statutes were:

"At any time hereafter, any three or more persons who may desire to form a company for the purpose of carrying on any kind of manufacturing, mining, chemical, merchandising or mechanical business; construct wagon roads, railroads, telegraph lines, dig ditches, build flumes, run tunnels, or carry on any

branch of business designed to aid in the industrial or productive interests of the country, may make, sign, and acknowledge before, some officer competent to take the acknowledgment of deeds, duplicate certificates in writing, in which shall be stated the corporate name of said company, and the object for which the company shall be formed, the amount of capital stock of the said company, the term of its existence, not to exceed fifty years, the number of shares of which the said stock shall consist, the number of trustees, and their names, who shall manage the concerns of the said company for the first year, and the name of the town and county in which the operations of the said company shall be carried on, and shall file one of said certificates in the office of the county clerk of each county wherein the business of the company is to be carried on, and one thereof in the office of the secretary of the Territory. The county clerk shall record said certificate in a book kept by him in his office for that purpose." § 1, c. 34, C.L.Wyo., 1876.

"Whenever any three or more persons associate under the provisions of this article, to form a company for the purpose of constructing a ditch for the purpose of conveying water to any mines, mills, or lands, to be used for mining, milling or irrigating of lands, they shall, in their certificate, in addition to the matters required in section one of this article, specify as follows: The stream or streams from which the water is to be taken; the point or place on said stream at or near which the water is to be taken out; the line of said ditch, as near as may be, and the use to which said water is intended to be applied." § 28, c. 34, C.L.Wyo., 1876.

"In order that all parties may be protected in their lawful rights to the use of water for beneficial purposes, every person, association or corporation, owning or claiming any interest in any ditch * * * within any water district shall * * * file with the clerk of the district court having jurisdiction of priority of rights to the use of water for irrigation, in such water district, a statement of claim, under oath, entitled of the proper court, which statement shall contain the name or names, together with the postoffice address of the claimant or claimants claiming ownership * * * of any such ditch * * *. The description of such ditch * * * the time * * * as the date of appropriation of water by original construction, also by any enlargement or extension, if any such thereof have been made, and the amount of water claimed by or under such construction, enlargement or extension, and the present capacity of the ditch * * * and also the number of acres of land lying under and being, or proposed to be, irrigated by water from such ditch * * *." § 1340, R.S.Wyo., 1887.

"It shall not be necessary for any corporation heretofore organized and now existing, or for any corporation hereafter organized, under the laws of this territory, which has heretofore, or shall have hereafter constructed, operated or maintained, any ditches * * * for the purpose of irrigation * * * to incorporate as a ditch company * * * if the objects or purposes for which such corporation shall have been formed or incorporated, imply, permit or make necessary, or advantageous, such use or uses of water; and such corporation for all the purposes of this chapter shall have all the rights of a natural person as defined herein, and shall have its rights determined in the same manner * * *." § 1358, R.S. Wyo., 1887.

"This chapter shall in no wise be construed as impairing or abridging any rights already vested in any person or persons, company or corporation by

virtue of the law heretofore in force." § 1361, R.S.Wyo., 1887.

The charter of incorporation of the Big Goose and Beaver Ditch Company, filed for record with the Secretary of the Wyoming Territory on October 16, 1885, stated that its objects and purposes were "to build, dig, and construct the ditches, and canals, hereinafter described, and all flumes and tunnels, which may be necessary in the construction of said ditches and canals in order to accomplish the purposes for which said company is created. * * * The said ditches and canals are to be constructed for the purpose of conveying water * * * [by various means] to be used for domestic, milling, mining, irrigation, and agricultural purposes." A further purpose was to issue water rights to owners or occupants of adjoining lands and to sell, lease, and supply water on such terms and conditions as the board of trustees might prescribe, all to be in accordance with the laws of the Territory. The bylaws of the company provided for the issuance of certificates of stock, the assessment of stock, its sale for delinquency, and by amendment on November 30, 1887, provided that "Each share of the capital stock of this company shall entitle and invest in the holder thereof a right to one-fortieth (1/40) of the water that is now and may be appropriated by this company, or so much water as may at any time be flowing * * * said right shall be deemed and regarded as sufficient evidence of holder's interest in the water of this company's ditches." A later amendment of February 19, 1896, substituted for the first amendment the following: "The water at any time flowing through the company's ditch shall be distributed among the stockholders prorata according to the stockholder respectively [sic] and without regard to the amount of water decreed to each stockholder by the State Board of Control of the State of Wyoming." On August 27, 1886, the President and Secretary of the Big Goose and Beaver Ditch Company, apparently in compliance with § 1340, R.S.Wyo., 1887, filed in the District Court of Johnson County a "Statement, Water and Ditch Claim," which alleged that the company was the owner of several ditches, described their locations and characteristics, alleged the date of appropriation to be August 13, 1886, and Big Goose and Beaver Ditch Company claimed water for the number of acres of land lying under and proposed to be irrigated by the several ditches, about 28,160 acres.

Notwithstanding that the ditch company had made the original "Statement, Water and Ditch Claim" and had provided in its charter and bylaws for the ownership of the water rights, Oser on March 24, 1892, filed with the president of the board of control "Proof of the Appropriation of Water" from Big Goose Creek, alleging therein that it was to be through the Big Goose and Beaver Ditch (the date of survey, August 29, 1885, the date of construction beginning August 13, 1886, not then completed), and that he had started irrigation for beneficial purposes in 1891. He described the land he irrigated: "200 acres. A part of each of the following tracts: SE$^4$SW$^4$ & S$^2$SE$^4$ Sec 12, S$^2$SW$^4$, SW$^4$SE$^4$ Sec 7 NE$^4$NW$^4$ NW$^4$NE$^4$ Sec 18, T 54 N R 85 W." In answer to the question, "Have you filed a claim to water in the office of the County Clerk? If so, give date of filing," he stated, "Yes. August 27, 1886, Big Goose and Beaver Ditch Co. statement." Under "Remarks" he said, "I own 1 share of the capital stock of Big Goose and Beaver Ditch Company and claim my appropriation through said company. I only succeeded in getting water in 1891, and can complete the application of water in 1892. I was compelled to build 5 miles of private ditch to secure water to my land." Thereafter, the board of control on March 25, 1895, issued a "Certificate of Appropriation of Water" to Oser, "from Big Goose Creek through the Big Goose and Beaver Ditch for Irrigation." On March 13, 1895, the board of control issued an order "determining the rights to the beneficial use of water of Big Goose Creek," and stated among other things, including the fact that

the proof had been submitted, that the rights of the appropriators dated from the beginning of the construction of the several ditches and that the rights of such appropriators to the water of Big Goose Creek, the amounts of such appropriations, and the other facts showing the location and extent of the rights to water from said stream "are as set forth in the following table: * * * [as to Oser] Priority Number 2003 28; Name of Ditch, Big Goose and Beaver; Name of Appropriator, Chas. H. Oser; P. O. Address, Big Horn; Date of Appropriation, August 29, 1885."

It is to be noted that following the beginning of the activities of the Big Goose and Beaver Ditch Company in 1885 the constitution of this State (effective July 10, 1890) provided for a board of control, consisting of the state engineer and superintendents of water divisions, which should have the supervision of the waters of the State and of their appropriation, distribution, and diversion. The first legislature, meeting in 1890, provided for the determination, by such board, of priorities of right to the use of the waters of the State. In January of 1894, the supreme court in the case of Frank v. Hicks, 4 Wyo. 502, 35 P. 475, 1025, made a significant decision wherein it was said at 35 P. 484:

"* * * a water right becomes appurtenant to the land upon which the water is used * * *. Under our system there is no such thing as a water right in gross. The application of the water to some beneficial purpose is absolutely requisite. And a water right for purposes of irrigation can no more exist, where there is no land to be irrigated, than can an easement for the passage of light to ancient windows exist where there never were any windows. And this would seem to be of the very essence of appurtenances. Where one thing depends upon another for its existence, it would seem entirely proper to call it appurtenant to that thing upon which it so depends."

In 1901 the legislature enacted the present § 41–190, W.S.1957:

"The final orders or decrees of the state board of control, in the proceedings provided by law for the adjudication and determination of rights to the use of the public waters of the state, shall be conclusive as to all prior appropriations, and the rights of all existing claimants upon the stream or other body of water lawfully embraced in the adjudication * * *."

Section 41–174, W.S.1957, also enacted at that time, provides that any person claiming the right to the use of water of any stream heretofore adjudicated by the board of control who should have failed to appear and submit proof of his claim should be permitted one year after the passage of the Act, but not thereafter, to apply for a hearing and an adjudication.

Although it would appear that it was the intent of the organizers to acquire water rights and that they conformed to territorial laws in pursuance of such intent, the fact remains that following statehood, when the legislature set up a definite procedure for adjudication, Big Goose and Beaver Ditch Company allowed the certificate of appropriation to be issued to Oser, and even now only seems to argue that Oser had a contractual relation with the ditch company growing out of the provisions of its charter and bylaws, which constituted a limitation to the certificate. Assuming arguendo that the status of the water right would have been dependent upon the contents of those instruments, a careful review discloses no provision therein which either directly or implicitly gave the water right to the company. It is true that under the amendment of the bylaws as long as Oser used the Big Goose and Beaver Ditch to bring water to his land he was supposedly entitled to receive one-fortieth of the water which the ditch carried rather than 2.85 c. f. s. stated in the certificate of appropriation and adjudication, but this alleged restriction did not even purport to affect the appurtenancy of the water right to the land in question.

This court has long held that water rights appurtenant to land pass with the conveyance of the land. Sturgeon v. Brooks, 73 Wyo. 436, 281 P.2d 675; McPhail v. Forney, 4 Wyo. 556, 35 P. 773; Frank v. Hicks, supra.

Plaintiffs depreciate the affidavit of defendant and the petition of Amy Moncreiffe, his predecessor in title to the real property, which show that for many years prior to the board of control's order changing the point of diversion of the Oser water the owner of the Oser land had diverted the water through the Peralta Ditch from Cross Creek, a tributary of the East Fork of Big Goose Creek some distance above the Big Goose and Beaver Ditch. An analysis of these averments shows that defendant's affidavit while being in part based on hearsay and of a negative nature is nevertheless unequivocal in its statement that during his ownership of the land he had continuously used the Oser water right by diverting the water through the Peralta Ditch, and the statement of Amy Moncreiffe was positive that she had made such a diversion for fifteen or twenty years prior to 1952. Plaintiffs submitted no evidence directly controverting these assertions, and at most said that no water was ever diverted from the East Fork of Big Goose Creek at the request of the predecessor of Amy Moncreiffe or furnished to him under the ditch company's appropriation, circumstances which are not necessarily inconsistent with defendants' mentioned statements.

Authorities are cited by plaintiffs for the proposition that shares of stock in mutual corporations represent water rights, 3 Kinney, Irrigation and Water Rights, p. 2663 (2 ed.); that in mutual corporations the right to the use of the water follows the shares of stock, 3 Kinney, Irrigation and Water Rights, p. 2669 (2 ed.); that the mutual companies are not subject to public control, 2 Wiel, Water Rights in the Western States, p. 1170 (3 ed.); and that in a mutual ditch company the stock certificate represents the water rights and will transfer them, Annotation, 70 A.L.R. 1008. These authorities are without persuasive force since counsel do not contend that they refer to situations where the landowner having an adjudicated water right did not transfer such right to the ditch company. It follows therefore that as to count one no genuine issue of any material fact was presented to the trial court, and the judgment was proper.

As to count two, plaintiffs' principal contention was that the defendant's predecessor in title to the Oser land did not own an interest in the August 29, 1885, Priority No. 28, water right and therefore could not legally secure a change in point of diversion. Since our holding that the water right in question remained appurtenant to the land renders this contention invalid, further discussion is unnecessary.

Affirmed.