**Wayne WEBER and Evelyn S. Weber, Appellants (Defendants below),**

v.

**JOHNSTON FUEL LINERS, INC., a Wyoming corporation, and the Bard Ranch Company, a corporation, Appellees (Plaintiffs below).**

**JOHNSTON FUEL LINERS, INC., a Wyoming corporation, and the Bard Ranch Company, a corporation, Appellants (Plaintiffs below),**

v.

**Wayne WEBER and Evelyn S. Weber, Appellees (Defendants below).**

**Nos. 4267 and 4268.**

Supreme Court of Wyoming.

March 7, 1974.

1. In this jurisdiction we have previously overruled a like charge of error. State v. Carroll, 52 Wyo. 29, 69 P.2d 542, 550–552.

**974**

Jack R. Gage, Hanes, Carmichael, Johnson, Gage & Speight, Cheyenne, for appellants in No. 4267 and appellees in 4268.

William R. Jones and Raymond B. Hunkins, Jones, Jones, Vines & Hunkins, Wheatland, for appellees in No. 4267 and appellants in 4268.

Before PARKER, C. J., and McEWAN, GUTHRIE, McINTYRE, and McCLINTOCK, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

This proceeding involves appeals by both parties from a judgment entered in the lower court. The appeals have been consolidated for the purposes of briefs and argument. To avoid confusion the parties will be mentioned herein by their respective names, using Johnston for Johnston Fuel Liners, Inc., and Bard Ranch Company; Weber for Weber and his wife; or in some instances as they appeared in the trial court.

These parties own adjoining ranches east of Wheatland, Wyoming. A private road traversed the lands of Weber, which is and was used by Johnston to get to the nearest highway. Johnston bases its claim upon a right-of-way conveyance from Samuel Butler Hall, et ux., to Howe Ranch, Inc., dated May 22, 1959, which right-of-way was obtained by Howe at the time it sold the lands now owned by Weber to Weber's predecessor in interest. Howe at that time required the execution of this right-of-way for the necessary ingress and egress as a part of this sale. Weber claims the ownership of the right-of-way by virtue of an assignment from Howe Ranch, Inc., to him and his wife dated September 9, 1971, after this suit was filed.

Johnston used this right-of-way from the time of its purchase of the lands without question of its right by Weber or any person until this controversy arose in August 1971. At that time, after some talks, Weber constructed a motor gate or "cattle guard" and a hinged swinging gate across the questioned right-of-way. Johnston, believing this dangerous and an interference with the safe and convenient use of the right-of-way, began this proceeding. No objection was directed at the right to install this cattle guard and gate but objection was made to the manner of its installation. During the negotiations prior to their installation Johnston asked and Weber agreed that the details of this installation should be approved by Kennedy, the County Engineer in Wheatland, in which request Weber acquiesced. However, Weber was unable to get the approval or inspection by Kennedy because of Kennedy's other commitments and Weber proceeded with this installation. After the construction of the so-called cattle guard and hanging of the gate Johnston filed its complaint and secured a temporary restraining order without notice. Upon the hearing for temporary injunction, which was denied, this order was held to have been wrongfully issued.

The judgment from which these appeals are prosecuted held that Johnston owned and possessed a valid right-of-way across certain lands of Weber situate in Section 21, Township 24 North, Range 67 West of the 6th P.M., Platte County, Wyoming; that it was created by a conveyance of a right-of-way dated May 22, 1959, in which Samuel Benjamin Hall, et ux., were grantors to Howe Ranch, Inc., as grantee; and that the assignment of the easement from Howe Ranch, Inc., to Weber, et ux., dated September 9, 1971, purportedly assigning the easement was invalid and of no legal effect. The judgment established an easement 50 feet wide, being 25 feet on either side of the center line of the established and existing roadway across Section 21, and was to be used solely and only by

Johnston as provided in the original grant as follows:

"* * * for the purpose of walking, driving or herding cattle and livestock and the driving and operation of motor driven vehicles thereon, * * *"

The repair and maintenance of the roadway were to be done by Johnston at its sole expense and it might be used by Weber as a means of ingress and egress to his property in Section 21. The court enjoined Weber permanently from in any manner interfering with the use of the roadway for the purposes mentioned and he was restrained from damaging, altering, or changing the surface of the roadway and the easement upon which it was established, allowing Weber to construct ramps from the right-of-way for access through his fields, such construction to be done in a manner to avoid accumulation of water on the roadway; ordered that Weber should maintain and repair the presently existing cattle guard and gate but within 30 days should extend the approach in an approximate straight line from a point 150 feet north and a point 150 feet south to the posts on the east side of the cattle guard; and that Johnston might install temporary fencing along the right-of-way to restrain the livestock being driven or herded across the lands of Weber and to restrain the livestock from injury to the lands and crops of Weber but must remove the fences when the cattle had been moved. The judgment further held that the temporary restraining order issued at the beginning of the suit was wrongfully issued and that Weber had suffered damages in the sum of $1000 to be paid from the $1000 bond required for the issuance thereof.

Weber seeks reversal upon several grounds which will be discussed. The parties substantially agreed in brief and argument that the principal question involved is the title or ownership of the right-of-way. For that reason we shall first make disposal of that question.

The lower court held that Johnston was the owner of a valid right-of-way over the lands of Weber created by the Hall conveyance and that the conveyance under which Weber claimed dated September 9, 1971, from Howe Ranch, Inc., to Weber, et ux., purportedly assigning such easement was invalid and of no force or effect. This holding was correct.

■ An examination of the Hall right-of-way grant and the testimony with reference to the condition on which it was obtained reveals strong evidence that the conveyance created an appurtenant easement for the use and benefit of the then lands of Howe Ranch, Inc., and was attached thereto. It contained a perpetual right-of-way grant for a stated purpose, as mentioned before, and the right to repair and maintain the same and the conveyance was to the grantee therein, "its successors and assigns." It also contained an express provision for its reversion to the grantors, their heirs, successors, and assigns if it be abandoned or the use ceased. All these conditions and terms are badges of an appurtenant easement. Weber does not in brief or argument cite any authority that this instrument created a personal right or license in Howe Ranch, Inc., or that the easement was in gross. This in spite of the fact that if he can claim any title to said right-of-way at all it must be so construed. An easement appurtenant may be defined as:

"An easement is appurtenant to land when the easement is created to benefit and does benefit the possessor of the land in his use of the land." 5 A.L.I. Restatement of the Law, Property Servitudes, § 453, p. 2914.

as contrasted to an easement in gross defined thereafter in § 454, p. 2917, as follows:

"An easement is in gross when it is not created to benefit or when it does not benefit the possessor of any tract of land in his use of it as such possessor."

"* * * an easement is never presumed to be in gross, when it can fairly be construed to be appurtenant.

* * *" Ginther v. Bammel, Tex.Civ. App., 336 S.W.2d 759, 763.

Also see Lester Coal Corporation v. Lester, 203 Va. 93, 122 S.E.2d 901, 904; 28 C.J.S. Easements § 4, pp. 636–638, and 25 Am. Jur.2d Easements and Licenses, § 13, p. 427. This instrument created an easement appurtenant and could not be separated from the dominant estate, Ricelli v. Atkinson, 99 Ohio App. 175, 132 N.E.2d 123, 127; William S. Stokes, Jr., Inc. v. Matney, 194 Va. 339, 73 S.E.2d 269, 272; McClintic-Marshall Company v. Ford Motor Company, 254 Mich. 305, 236 N.W. 792, 796, 77 A.L.R. 807, and cases cited there; 28 C.J.S. Easements § 45, p. 708; 25 Am. Jur.2d Easements and Licenses, § 94, p. 500.

Weber asserts that based upon the later assignment standing uncontradicted this is conclusive evidence of the title. This contention cannot, of course, prevail because this interest was not alienable, pretending as it did to convey an easement not separable from the lands to which it was appurtenant, and was therefore of no legal effect, and was ineffective to convey any interest therein or title thereto, Miller v. Powers, 184 Ky. 417, 212 S.W. 453, 455; Burns v. Woodson, Okl., 363 P.2d 233, 236; Concord Corporation v. Huff, 144 Colo. 72, 355 P.2d 73, 75.

The record further demonstrates that Weber at all times—until this suit was filed and until he obtained this assignment of right-of-way—recognized the use, ownership, and possession by Johnston and apparently construed it as a continuing easement. This is evidenced by their mutual negotiations and attempted agreement as to the manner of the installation of the controversial cattle guard and gate, and Weber's testimony about one conversation with Johnston, telling it if there was not "within your 50 feet of right-of-way" sufficient dirt it could use land from the areas Weber was going to level on the remainder of these premises. Weber firmly contends that Johnston has failed to establish its title to this right-of-way, relying upon Bybee v. Northern Utilities Company, Wyo., 375 P.2d 477, insisting this case is not distinguishable, and further asserting that because of the introduction of his conveyance from Howe Ranch, Inc., dated after the filing of this original suit, the title hereto should be confirmed in him.

■ With these contentions we cannot agree. We have already decided Weber acquired no title to the right-of-way by virtue of his conveyance. Although there was no abstract of title nor instrument evidencing the conveyance of Howe Ranch, Inc., lands there was testimony, unobjected to, that shows Howe is not the present owner thereof and has not been for some years but that Johnston does now own and occupy these lands and had used this right-of-way for at least five years in the operation thereof. Weber points out this is a clear violation of the best evidence rule, with which we agree, but in the absence of objection we cannot say it must or should be disregarded. Any objection Weber had thereto was waived by the failure to assert an objection at that time, Beckle v. Beckle, Wyo., 452 P.2d 205, 209; Gerdom v. Gerdom, Wyo., 444 P.2d 34, 36; In re Bridger Valley Water Conservancy District, Wyo., 401 P.2d 289, 292.

Johnston was cut off from any further showing because of the court's ruling at the beginning of the trial that Weber's conveyance was not effective and the easement was one which attached to the land and went with the land when it was conveyed. A close examination of the factual situation of the Bybee case above cited indicates a clear difference. In that case Northern Utilities attempted to establish title to a right-of-way vested in one of its predecessors by testimony that one corporation had absorbed another and had bought nearly all of the capital stock. In that case "plaintiff made no effort to prove an assignment, conveyance or other transfer of the 1922 easement from the grantee named therein," 375 P.2d at 478.

■ Here we have proof of the conveyance of the dominant estate by Howe

Ranch, Inc., and that Johnston is the present owner. "This court has long held that water rights appurtenant to land pass with the conveyance of the land. [Citations]," Big Goose and Beaver Ditch Company v. Wallop, Wyo., 382 P.2d 388, 393. This is also applicable to easements, Haab v. Moorman, 332 Mich. 126, 50 N.W.2d 856, 865; Levine v. Chinitz, 233 Iowa 212, 8 N.W.2d 735, 738; Union Falls Power Company v. Marinette County, 238 Wis. 134, 298 N.W. 598, 601, 134 A.L.R. 958.

Further, there is another basis upon which the trial court might have found the right to the use and ownership of said easement to be in Johnston. The record shows without dispute that this road was used as an access for the Howe Ranch and its successors beginning in at least 1945 and up to the present date, and that Weber had notice thereof because of its location and use at the time he purchased these lands, Arndt v. Sheridan Congregation of Jehovah's Witnesses, Wyo., 429 P.2d 326, 329.

■ The principal thrust of Weber's claim of lack of jurisdiction is based upon these propositions: "that the plaintiff and the court commissioner failed to comply with the necessary procedural requirements to vest jurisdiction in the court commissioner"; "that the court commissioner did not have subject matter jurisdiction to issue the so-called 'temporary restraining order'"; and that because this order involved the merits of the cause it was a preliminary injunction and not a temporary restraining order and could not be the subject of an ex parte proceeding, and thus was beyond the jurisdiction of the commissioner. Additionally, we find a suggestion in defendants' brief that because of this the court might not have had the power to grant either an interlocutory or final injunction. The judge who heard the application for preliminary injunction and the trial judge who entered the final judgment held that this temporary restraining order was wrongfully issued and that Weber was wrongfully restrained. This does not operate to destroy the jurisdiction of the dis-

trict court upon the suit for permanent injunction.

■■ Jurisdiction of a civil suit is ordinarily obtained by the filing of a proper complaint and the issuance and service of a summons, Robertson v. State Highway Commission, Wyo., 450 P.2d 1003, 1004; and even if service of notice was insufficient it was waived when the defendants proceeded without objection, State ex rel. Sheehan v. District Court of Fourth Judicial District, Wyo., 426 P.2d 431, 435; Padlock Ranch v. Washakie Needles Irr. Dist., 50 Wyo. 253, 60 P.2d 819, 61 P.2d 410, 412. A suit for injunction is a civil suit and the rules of procedure are the same as in any other civil suit, 43 C.J.S. Injunctions § 162, p. 779, and cases cited therein. See Rules 1, 2, 3, and 4, W.R.C.P. This contention further ignores the fact that a temporary restraining order or preliminary injunction is in the nature of a provisional remedy, § 1–856, W.S.1957, and may be issued at any time during the pending litigation, § 1–857, W.S.1957, which indicates that jurisdiction is not dependent upon the propriety of such proceedings but upon the proper service of a complaint and summons about which there is no question in this case.

■■ The contentions of Weber are directed at the jurisdiction of the court commissioner and not to the jurisdiction of the district court. This is not a separate court or in any manner distinct from the district court but is an adjunct and officer of that court, Mau v. Stoner, 12 Wyo. 478, 76 P. 584, 586; State v. Nash, 27 Wis.2d 183, 133 N.W.2d 769, 775; 20 C.J.S. Court Commissioners § 1, p. 1307. The district court having jurisdiction, it would follow that the court commissioner—although he may have made an improper order—had jurisdiction by virtue of his position.

■ The record reveals a most alarming failure to give proper notice or properly follow the procedures for issuance of a temporary restraining order without notice under Rule 65(b), W.R.C.P. If there was, because of these procedural deficiencies, a lack of jurisdiction over his

person insofar as the issuance of that order is concerned, Weber waived this by his filing of the motion to dismiss which he joined with the claim for damages by way of affirmative relief. By virtue of this he waived jurisdiction over his person, Bank of Chadron v. Anderson, 6 Wyo. 518, 48 P. 197, 199; Padlock Ranch v. Washakie Needles Irr. Dist., supra. Weber had remedies by virtue of this rule which he did not invoke. At any time after the temporary restraining order was issued he could have moved for its dissolution or modification on two days' notice or such shorter time as the court might have prescribed. No motion to dismiss this order was filed until September 9—some 15 days after its issuance, and even after its extension. Nowhere in the proceedings did Weber attack the sufficiency of the bond or request its increase. Weber at all times pursued this claim for affirmative relief as evidenced by the amendment of the claim for damages and the contentions in the pretrial memorandum hereinafter mentioned. Weber's counsel on this appeal asserts a different theory as the basis for his recovery of damages than was asserted in the trial court by the earlier attorney. A new theory cannot be asserted on appeal, Burnell v. Roush, Wyo., 404 P.2d 836, 839; Laramie Printing Trustees v. Krueger, Wyo., 437 P.2d 856, 859.

Weber attacks the jurisdiction of the court commissioner to issue the temporary restraining order, styling it a preliminary injunction without any citation of authority for such classification. This contention, however, ignores § 1–858, W.S.1957, which was not superseded by the Rules of Civil Procedure and which grants to the commissioner the power, in the absence of the judge, to issue a preliminary injunction. To successfully assert this would require a holding that this statute is unconstitutional. It was never so suggested in the trial court and there is no occasion for any further consideration of this contention at this time, Karns v. Karns, Wyo., 511 P.2d 955, 958.

Weber asserts that the trial court's consideration of damages was erro-

neous as premature. This contention is unavailable to him here for at least two reasons. First, such award was made upon Weber's claim for damages filed September 9, 1971, with a prayer that the court enter an order for such damages for the wrongful issuance of the temporary restraining order through September 7 and for accruing damages. The pretrial order grants the request by Weber to amend his claim for damages and in the pretrial memorandum filed in his behalf we find Weber asserting as a proper ground for relief "the amount of damages to which defendants are entitled as the result of the wrongful issuance of the temporary restraining order." He cannot now successfully assert grounds for reversal because if this was error it was "invited error," he having induced the trial court to determine the question of damages, Bagley v. Watson, Wyo., 478 P.2d 595, 598; Krahn v. Pierce, Wyo., 485 P.2d 1021, 1029. Some courts do hold that even though the error be fundamental it cannot be raised if invited, Hursey v. Hursey, Tex.Civ.App., 165 S.W.2d 761, 765. Secondly, the court has repeatedly stated it will not consider questions on appeal not raised in the trial court, Karns v. Karns, supra, and cases collected in 1 Wyoming Digest, ■ Appeal and Error, p. 235, and 1973 supplement.

■ Johnston attacks such award upon the ground that the court having finally decided that plaintiff was entitled to an injunction there could be no recovery on this bond, and secondly objecting because it was given no opportunity to present rebuttal evidence as to the damages suffered by Weber nor was it allowed to make any showing of the accruing damages resulting from the alleged wrongful acts of Weber.

It may be conceded that it is an oft-stated general rule if the plaintiff prevails in the final hearing on the injunction the defendant cannot recover even if the temporary restraining order or preliminary injunction was wrongfully issued. However, good sense and equity dictate an exception

to this rule when the temporary restraining order is overly broad or too far-reaching in scope, Northeast Airlines, Inc. v. Nationwide Charters and Conventions, Inc., 1 Cir., 413 F.2d 335, 338; Atomic Oil Company of Oklahoma, Inc. v. Bardahl Oil Company, 10 Cir., 419 F.2d 1097, 1102, certiorari denied, 397 U.S. 1063, 90 S.Ct. 1500, 25 L.Ed.2d 685; Clem v. Hunz, 132 Wash. 14, 231 P. 7, 40 A.L.R. 987. The last cited case is particularly illustrative of the application of this insofar as these facts are concerned. In that case a temporary restraining order was obtained prohibiting defendants from in any manner obstructing or diverting any water from a ditch. This was continued into the time of trial by the terms of the temporary injunction which was then issued and identical in its terms to the temporary restraining order. Upon the trial of said case this injunction was granted but materially modified and defendants given a right to certain of the excess water. It was held that the defendants could proceed to recover the damages suffered under the bond because of the overbreadth of the original order, 231 P. at 7–8, and cases cited therein. An examination of the temporary restraining order issued by the court commissioner in this case without notice when contrasted to the final judgment in the instant case demonstrates the trial court did not adjudicate all these matters in favor of Johnston. This order restrained "unauthorized use" by Weber or his agents and employees of this private right-of-way and restrained Weber from "obstructing the said right-of-way by use of gates or other devices preventing free access of the plaintiff or his equipment to the right-of-way." The final judgment herein limits the use of the right-of-way in Johnston to the purposes set out in the conveyance, to wit:

"For the purpose of walking, driving or herding cattle and livestock and the driving and operation of motor driven vehicles thereon * * *"

It allows Weber to construct ramps on the right-of-way for access to his fields if done in such manner as to avoid accumulation of water and allows Weber to maintain a cattle guard and gate if he should properly extend the approaches.

Weber, in obedience to the terms of the temporary restraining order, moved his cattle from the premises and ceased some of his agricultural activity. It may be assumed that he sought to avoid a possible contempt charge in face of the broad restraint. This should certainly not be utilized as a device to deprive Weber of any damages which flowed therefrom. It is to be noted that this too-broad temporary restraining order must have been prepared by counsel for Johnston because it was presented and allowed without any notice to Weber. Weber was certainly by the terms of the easement, as demonstrated by the final judgment, entitled to the proper use of this right-of-way so long as it did not directly interfere with the use by Johnston.

The trial court in making its award of damages in the sum of $1000 stated, "There is testimony that while that [temporary restraining order] was in effect certain things were done by the defendant in moving cattle and doing other things. There was a bond set up on this. The Court is going to, and I think the evidence would show more than that, but he is going to grant damages to the defendant in the sum of one thousand dollars. I think that covers it all."

The hearing on the preliminary injunction became a part of the record and the court relied largely thereon, Rule 65(a)(2), W.R.C.P., and in reliance upon that record rather strictly limited the admission of any further evidence at the time of the trial. At the time of this hearing for preliminary injunction the parties stipulated and the court agreed that the parties would not go into the question of damages and that if after the disposition of the motions there was any issue of damages it would be gone into later. We do not find from an examination of the testimony at this hearing that there is any evidence, besides that of cer-

tain cattle having escaped from one field to another and some inconvenience suffered, upon which any dollar value could be assigned and it would necessarily be a matter of speculation. This cannot be the basis for such a judgment, Colorado Kenworth, Inc. v. Archie Meek Transportation Co., Wyo., 495 P.2d 1183, 1186–1187; Reeder Flying Service v. Crompton, Wyo., 470 P.2d 281, 286; Blakeman v. Gopp, Wyo., 364 P.2d 986, 991.

Weber did file a claim for damages and itemized these in the form of pleadings but there is no testimony to support this. Additionally, at the time of the final hearing thereon the trial judge advised counsel that he would deny Johnston's motion to present additional evidence and an offer of proof of the matters contained, the witnesses listed, and a detailed summary of the testimony herein filed, saying he believed there was sufficient evidence. The detailed list included several witnesses who would have testified to the interference of Johnston's and its employees' use of the right-of-way, the collection of large amounts of waste irrigation water on the right-of-way, the feeding of livestock thereon, and generally damages to the road due to defendant's interference. It also contained a provision desiring to offer rebuttal witnesses upon the question of Weber's damages, which right we would deem fundamental to our system.

This case must therefore be remanded for a complete hearing upon the question of damages, both those claimed by Weber and those claimed by Johnston as accruing damages, and is affirmed in all other respects.