## Richmond

GEORGE O. HINTON V. HARVEY ALBERT HINTON, ET AL.

January 20, 1969.

Record No. 6824.

Present, All the Justices.

*M. Ray Johnston* (*Clarke and Johnston,* on brief), for appellant.

*Roland M. Dameron, Jr.* for appellees.

GORDON, J., delivered the opinion of the court.

We have the case of a deed that reads like the deed in *Shelley's Case.* But, unfortunately, the rule in *Shelley's Case* cannot help us solve the riddle of this deed, because that rule has been abolished by Virginia Code § 55-14.

The deed in question, executed by E. J. Marsh and Mary Marsh on January 28, 1927, conveyed property known as Bunker Hill Farm to their daughter Emma M. Hinton during her lifetime. The granting clause of the deed then provided:

"and then to the natural heirs of her body forever—to her as long as she may live, then at her death to the natural heirs of her body, if any of her children of her body may then be living; and if no natural heir or heirs of her body may survive her, then at her death to the nearest heirs of her body or blood relatives . . ."

The habendum clause provided:

"to have and to hold and defend unto her, the aforesaid Mrs. Emma M. Hinton, party of the Second Part, her natural lifetime, then to the children of her body, if any survive her, if no child of her body survives her, then and in that case at her death to her nearest blood relatives, as above, forever."

The life tenant Emma M. Hinton died on August 6, 1966, survived by one child, George O. Hinton, and by a deceased son's children, Harvey A. Hinton and J. Warner Hinton, III.

George O. Hinton brought this suit seeking a construction of the deed. By a final decree, the trial court held that the deed conveyed a one-half remainder interest to the child, George O. Hinton, and a one-quarter remainder interest each to the grandchildren Harvey A. Hinton and J. Warner Hinton, III. George O. Hinton appeals from that decree, asserting that the court should have declared him the sole owner of the property.

Counsel for George O. Hinton contends that the granting and habendum clauses, when read together, evidence the grantors' intent to vest the remainder solely in the life tenant's surviving child or children ("children of her body"). Counsel for the appellees, Harvey A. Hinton and J. Warner Hinton, III, contends that the granting clause evidences the grantors' intent to vest the remainder in the life tenant's descendants ("heirs of her body"); and that under the rule of *Mills* v. *Embrey,* 166 Va. 383, 186 S.E. 47 (1936), the granting clause must prevail if the granting and habendum clauses are irreconcilable.

The granting clause of the deed vests the remainder in the *"natural heirs of her body,* if any of her *children of her body* may then be living", or, "if no *natural heir or heirs of her body* may survive her, then at her death to the *nearest heirs of her body* or blood relatives". Proper interpretation of the granting clause depends upon the meanings of the italicized terms.

The accepted meaning of "heirs of her body" is *descendants. Jenkins* v. *Hogg,* 139 Va. 682, 124 S.E. 392 (1924). But we should give the accepted meaning to that term only if that meaning makes the granting and habendum clauses sensible as a whole. "[I]n the effort to give the words their due force, we must not lose sight of other parts of the instrument, but each part must be construed with ref-

erence to the whole, so as to make it harmonious and sensible as a whole." *Willis* v. *Kalmbach*, 109 Va. 475, 482, 64 S.E. 342, 345 (1909).

Counsel for the grandchildren-appellees would have us give the meaning *descendants* to the terms *"natural heirs of her body"* and *"nearest heirs of her body"*, and the same meaning to the term *"children of her body"*. But if we give those terms that meaning, the granting clause would not be sensible as a whole, for it would read:

> "and then to her descendants forever—to her as long as she may live, then at her death to her descendants, if any of her descendants may then be living; *and if no descendant or descendants may survive her, then at her death to her descendants* or blood relatives. . ."

And it makes no sense to provide that if no descendant or descendants survive the life tenant, the property goes to descendants. So we must reject the interpretation urged by the grandchildren's counsel, if other meanings can be reasonably given to the italicized terms and if such other meanings make the granting clause "harmonious and sensible as a whole".

Significantly, the draftsman used two different adjectives, "natural" and "nearest", to modify the words "heirs of her body". The question is what meaning or meanings should be ascribed to the terms "natural heirs of her body" and "nearest heirs of her body".

When the draftsman designated the primary remaindermen, he equated "natural heirs of her body" with *"children of her body"*; but when he designated the alternate remaindermen, he used the different term "nearest heirs of her body". Not only was a different term used to designate the alternate remaindermen, but the context of the granting clause also shows that a different meaning was intended. And if a different meaning was intended, the draftsman must have meant *children* by "natural heirs of her body" and *nearest descendants* by "nearest heirs of her body". Ascribing those meanings to the terms, we see that the granting clause is harmonious and sensible as a whole, for it would read:

> "and then to her children forever—to her as long as she may live, then at her death to her children, if any of her children may then be living; and if no child or children may survive her, then at her death to her nearest descendants or blood relatives. . ."

We therefore ascribe the meaning *children* to "natural heirs of her body" and the meaning *nearest descendants* to "nearest heirs of her body", and interpret the granting clause as vesting the remainder in the child or children of the life tenant who survived her.

The habendum clause designates the remaindermen as the "children of her body", instead of "natural heirs of her body". The trial judge refused to give weight to the habendum clause not because the term "children of her body" should not be given its accepted meaning *descendants of the first degree*, but because he found the habendum clause irreconcilable with the granting clause. However, the language of the habendum clause should be ignored only when the granting and habendum clauses are "entirely inconsistent". *Mills* v. *Embrey*, *supra* at 387, 186 S.E. at 49. And ascribing to the term "children of her body" its accepted meaning, we have given consistent meanings to the granting and habendum clauses.

We will enter an order declaring that upon the death of Emma M. Hinton, title to the property conveyed under the deed dated January 28, 1927 vested in George O. Hinton, the appellant.

*Reversed and final decree.*