COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Chief Judge Decker, Judges Beales and Raphael
Argued at Norfolk, Virginia

STEPHEN R. JONES, ET AL.

                                                 MEMORANDUM OPINION BY
v.     Record No. 1712-22-1     CHIEF JUDGE MARLA GRAFF DECKER*
                                                    FEBRUARY 6, 2024

SOUTH BAY SHORE LLC, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Steven C. Frucci, Judge

Patrick R. Hanes (George H. Bowles; Williams Mullen, on briefs),
for appellants.

John C. Lynch (Megan E. Burns; Troutman Pepper Hamilton
Sanders LLP, on brief), for appellees.

This appeal involves a dispute between owners of adjacent lots of waterfront property. The

appellants, Stephen R. and Ludmilla L. Jones, own lot 35A, and South Bay Shore LLC owns lot

34A. James P. Karides owns South Bay Shore LLC.[1]  He resides on lot 34A with his wife, Guzin

N. Karides. South Bay Shore and the Karideses are the appellees. In 1999, before the appellees

acquired lot 34A, the appellants obtained an express "visual easement" over a portion of that lot by

deed. That easement permits the appellants to prevent lot 34A's owner from placing structures in

the area covered by the easement. In 2020, the appellees bought the lot burdened by the appellants'

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The record establishes that James Karides at least partially owns the company. In the trial court, the appellants alleged a more complicated ownership structure involving a parent company of South Bay Shore LLC co-owned by James Karides and others. We need not consider the appellants' more detailed allegations regarding ownership in order to resolve the appeal.

easement and constructed a pier extending into the creek. The appellants sued to remove the pier, claiming, in part, that it unreasonably interfered with the appellants' enjoyment of their easement.

The trial court found that the language creating the easement was ambiguous and allowed the appellants to present parol evidence about the intended scope of the easement. After considering the parol evidence, the court found that the limits of the easement remained unclear and that the appellants failed to prove the pier interfered with their easement. Accordingly, the court granted the appellees' motion to strike as to the issues relevant in this appeal. We conclude that the deed unambiguously establishes the metes and bounds of the easement and that the trial court ultimately did not err in concluding the appellants failed to prove that the pier unreasonably interfered with their enjoyment of the easement. Therefore, we affirm the court's judgment.

BACKGROUND[2]

Both the appellants and the appellees bought the lots at issue from the family of the same common grantor, Carolyn S.G. Tyler. She originally owned five waterfront lots on South Bay Shore Drive in Virginia Beach adjoining Little Neck Creek, referred to as lots 33 through 37. In 1999, she conveyed lots 35, 36, and 37 to the appellants while retaining lots 33 and 34. In October 2000, Tyler and the appellants replaced the original deed with a deed of correction. The corrected deed conveyed the same three lots but also incorporated a resubdivision plat depicting lots 33, 34, and 35.

The resubdivision transferred a portion of Tyler's lot 34 to the appellants' lot 35, a portion referred to as "Area 'A.'"[3] The plat renamed lots 34 and 35 as 34A and 35A. Although

---

[2] When reviewing a trial court's decision to strike a plaintiff's evidence, appellate courts "view the evidence in the light most favorable to the plaintiff[s]," in this case the appellants. *Volpe v. City of Lexington*, 281 Va. 630, 639 (2011) (quoting *TB Venture, LLC v. Arlington County*, 280 Va. 558, 563 (2010)).

[3] The original deed attempted to accomplish the same purpose but did not include the required resubdivision plat.

the appellants received ownership of Area A, they were not permitted to place structures "upon Area 'A', which include[d] the adjoining portion of Little Neck Creek to the mean low water line." Two exceptions to that restriction permitted them to construct a fence within specified limits and repair or replace "the existing pool, patio, bulkheads and dock (so long as there [was] no change in the size of [the] existing dock within Area 'A')." The restriction was "for the benefit of [Tyler], her heirs and successors."

In addition to Area A, the deed also "establishe[d] an easement for the benefit of the [Joneses], their heirs, successors and assigns over, across, upon and through, in perpetuity, that parcel of property shown as the visual easement more fully described . . . [in] the [r]esubdivision [p]lat, and . . . referred to as the '[Joneses'] Visual Easement Area.'" The resubdivision plat showed two triangles on lot 34A adjoining Area A and labeled those triangles "visual easement." The plat listed the measurements of those triangles.

The plat further included a line between the lots and Little Neck Creek labeled as the "approx[imate] location of wood bulkhead."[4] The plat depicted both Area A and the visual easement as terminating at the bulkhead. The plat explained, however, that the "bearing and distances shown along [the] water" were "for computation purposes only" and that the "property line" was the "mean low water." The resubdivision plat is shown here:

---

[4] A bulkhead is a "retaining wall along a waterfront." *Bulkhead*, *Webster's Third New International Dictionary* (1993).



After defining the "[Joneses'] Visual Easement Area" by reference to the plat, the deed

continued:

> The restrictions imposed hereby on the use of the [Joneses'] Visual Easement Area, the acts which [Tyler] covenants to do or not to do and the restrictions which the [Joneses] are hereby entitled to enforce, shall be as follows: (1) *the property encompassed within the said easement property, which includes the adjoining waters of Little Neck Creek to the mean low water line, shall be maintained free of any structures whatsoever* (including, without limitation, any buildings, fences, walls, decks or storage sheds).

(Emphasis added). The deed allowed Tyler and her heirs and successors to maintain, replace, or repair the existing bulkhead. It also allowed the appellants and their heirs to "plant and maintain grass, trees, shrubs, flowers and other landscaping on [their] Visual Easement Area" and "enjoy and utilize the easement as an extension of the[ir] lawn and garden."

In February 2020, Tyler's heirs conveyed lot 34A to South Bay Shore LLC, an entity at least partly controlled by James Karides. At the time, lot 34A was an undeveloped wooded lot. Shortly thereafter, Karides and his wife began constructing a home on the property and applied for a permit from the Virginia Marine Resources Commission to construct a pier. The proposed pier was to begin at the bulkhead just south of the visual-easement area depicted on the plat and extend into Little Neck Creek.

Stephen Jones objected to the Commission that the proposed pier violated his visual easement, which he contended protected his view of "the entirety of Little Neck Creek" to the southeast of his property. The Commission responded that the visual easement had "[no] bearing" on its review of whether the proposed pier complied with the state laws and regulations it was authorized to apply. The appellants sued, seeking a preliminary injunction to prevent the appellees from constructing the pier. The trial court refused the injunction request, and the Supreme Court denied appellate review, after which the appellants nonsuited the action. The appellees constructed the pier.

The appellants filed this suit, raising five overlapping counts. Counts one and two sought a determination that the pier unreasonably interfered with their "[v]isual [e]asement and associated [r]iparian [a]rea" under Code § 55.1-305[5] and violated their "private rights" to these

---

[5] Code § 55.1-305 makes it a private nuisance for the owner of a servient estate to "engage in an activity or cause to be present any objects either upon the burdened land or immediately adjacent to such land that unreasonably interferes with the enjoyment of the easement by the owner of the dominant estate."

same things under Code § 62.1-164.[6] Count three requested a declaratory judgment that the deed severed the riparian rights associated with lot 34A and awarded those rights to the appellants. Count four sought a declaratory judgment that the pier unreasonably interfered with their visual easement. Count five requested that the court reform the deed by removing "to the mean low water line" after "the adjoining waters of Little Neck Creek." In addition to the five numbered counts, the appellants sought a permanent injunction requiring removal of the pier and restricting any future construction that would interfere with their easement.

After denying the appellants' motion for partial summary judgment, the trial court conducted a bench trial at which the parties disputed whether the easement covered the property on which the appellees built their pier. When the appellants called Stephen Jones to testify about the parties' intent in drafting the deed, the appellees objected, arguing that the parol evidence rule barred Jones's testimony because the deed was unambiguous. The dispute about the deed's meaning centered on two provisions: (1) the provision that the easement was "over, across, upon and through" the easement area shown by the triangles on the plat and (2) the provision prohibiting construction on "the property encompassed within the said easement property, *which includes the adjoining waters of Little Neck Creek to the mean low water line*." (Emphasis added).

With regard to the first provision, the appellants argued that the deed's use of the word "through" meant that the easement "d[id]n't stop at the boundary of [their] visual easement area" depicted on the plat. They further argued that the phrase "adjoining waters" in the second provision would be redundant unless it referred to the waters beyond the mean low-water line

---

[6] Code § 62.1-164 authorizes a person owning waterfront property to erect a private wharf or pier provided it does not injure "the private rights of any person."

because the easement area depicted on the plat already extended to the mean low-water line on the land side.

The appellees responded that "through" meant simply through "to the end of the visual easement." They further argued that "adjoining waters" was added to the deed because high tide could result in the presence of water above the mean low-water line.

The trial court determined that "through" was an unambiguous term that was redundant with "upon" and covered only the land-based visual-easement area shown on the plat. The court also concluded, however, that the adjoining-waters phrase was ambiguous. Accordingly, the court allowed the appellants to present parol evidence about the meaning of that phrase, which they did mainly through the testimony of Stephen Jones.

After considering the parol evidence, as well as expert testimony primarily concerning the apportionment of riparian rights, the trial court granted the appellees' motion to strike the evidence as to the claims at issue in this appeal.[7] The court found that the phrase, "which includes the adjoining waters of Little Neck Creek to the mean low water line," was ambiguous but referred to "water past the bulkhead." The court determined, however, that "nothing in the drawings attached to the [d]eed . . . or the [d]eed . . . itself" gave the court "any guidance as to the measurements and boundaries of that area beyond the bulkhead." Ultimately, the court concluded that if it tried to define the scope of the easement, it "would be engaging in guesswork." The court therefore held that it could not determine "from this one phrase about adjoining waters" that the "easement [extended] out through riparian areas of" the appellees. Consequently, the court entered final judgment against the appellants.

---

[7] The appellants do not challenge the court's rulings on their riparian-rights claims, one of which survived the motion to strike but was ultimately also resolved against them.

ANALYSIS

The appellants—the Joneses—contend that the trial court erred by concluding that they failed to prove that the appellees' pier infringed upon their easement. The appellees—South Bay Shore LLC and the Karideses—argue that the appellants' ability to raise this claim on appeal is barred. They further argue that the trial court did not err in finding the evidence insufficient to prove infringement with the appellants' easement.

## I. Alleged Failure to Challenge an Alternative Holding

As an initial matter, the appellees contend that the trial court's ruling that the pier did not encroach on the appellants' riparian rights constituted an independent ground for its grant of the appellees' motion to strike.[8] Consequently, they argue that the appellants' easement claims are barred on appeal.

In "situations in which [a court makes] one or more alternative holdings on an issue," an appellant's "failure to [challenge] one of the holdings results in a waiver of any claim of error with respect to the court's decision on that issue." *Neff v. Commonwealth*, 63 Va. App. 413, 416 n.3 (2014) (quoting *Johnson v. Commonwealth*, 45 Va. App. 113, 116 (2005)). Before holding an argument has been waived, however, this Court must satisfy itself that the unappealed, alternative holding "would legally constitute a freestanding basis in support of the trial court's decision." *Johnson*, 45 Va. App. at 117.

We disagree that the appellants' decision not to appeal the trial court's riparian-rights ruling waived their easement claim. The appellants presented two theories below for why the appellees' pier violated the appellants' rights. First, they argued that the express visual easement

---

[8] The appellants raised two different points with regard to riparian rights in the trial court. They suggested that either the appellees' pier encroached on lot 35A's riparian area or the deed severed Tyler's riparian rights in lot 34A and conveyed those rights to the appellants, resulting in a much larger encroachment. The appellees' procedural bar argument implicates only the second of these rationales.

allowed the appellants to restrict the appellees from exercising one of the appellees' riparian rights (visual-easement theory). Second, they argued that the appellees' pier encroached on the appellants' own riparian area (riparian-rights theory). If the visual-easement theory is correct, the appellants would be entitled to relief even if they lose on the riparian-rights theory. Therefore, the trial court's ruling on the riparian-rights theory is not a freestanding basis on which to affirm the judgment, and the appellants' challenge to the ruling on their visual-easement claim is not barred.[9]

## II. Scope of the Easement

Turning to the merits of the easement issue, we hold as a matter of law that the language creating the easement in the deed and the incorporated plat unambiguously did not prohibit the appellees' pier. Consequently, we do not reach the appellants' claim that the trial court erred by concluding that the language granting the easement was too indefinite to enforce despite the court's admission of parol evidence.

It is well settled that appellate courts "are not 'limited to the grounds offered by the trial court in support of its decision.'" *Taylor v. Northam*, 300 Va. 230, 251 (2021) (quoting *Perry v. Commonwealth*, 280 Va. 572, 582 (2010)). Instead, under the "right result, different reason" doctrine, we may "affirm the court's judgment on alternate grounds, if such grounds are apparent

---

[9] The appellees suggest that waiver occurred for an additional reason. They argue that Tyler could not convey an easement over the land below the mean low-water line to a third party because, under Code § 28.2-1200, that land was owned by the Commonwealth. Notwithstanding the appellees' framing, this argument in fact challenges the merits of the appellants' easement claim. In our view, examining the easement language in the deed provides a better and narrower ground for decision than addressing the ability of a property owner with riparian rights in a creek bed owned by the Commonwealth to grant an easement over that creek bed to another. *See Appalachian Power Co. v. State Corp. Comm'n*, 301 Va. 257, 292 (2022) (recognizing that "[t]he doctrine of judicial restraint dictates that [appellate courts] decide cases 'on the best and narrowest grounds available'" (first alteration in original) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))); *Phillips v. Rohrbaugh*, 300 Va. 289, 313 n.8 (2021) (applying best-and-narrowest-ground principles to "leave several issues undecided").

from the record." *Id.* (emphasis omitted) (quoting *Perry*, 280 Va. at 582); *see Robert & Bertha Robinson Family, LLC v. Allen*, 295 Va. 130, 141 & n.9 (2018) (explaining the doctrine applies only if additional factual findings are not required).

"In resolving a dispute between landowners regarding the terms of an easement that is granted or reserved expressly by deed, we apply the customary rules governing the construction of written documents." *Anderson v. Delore*, 278 Va. 251, 257 (2009). "[L]ike other contracts," appellate courts "review a trial court's construction of a deed of easement de novo." *Wetlands Am. Tr., Inc. v. White Cloud Nine Ventures, L.P.*, 291 Va. 153, 160 (2016) (citing *Marble Techs., Inc. v. Mallon*, 290 Va. 27, 33 (2015)). We also review de novo the fundamental question of whether a deed is ambiguous. *Id.* ("The question whether a writing is ambiguous is not one of fact but of law." (quoting *Langman v. Alumni Ass'n of the Univ. of Va.*, 247 Va. 491, 498 (1994))); *see also Dye v. CNX Gas Co.*, 291 Va. 319, 323 (2016) (explaining that whether a deed is ambiguous is a "strictly legal issue").

Restrictions on "the free use of land," including negative easements, "are not favored and must be strictly construed."[10] *Wetlands Am. Tr.*, 291 Va. at 163 (quoting *Friedberg v. Riverpoint Bldg. Comm.*, 218 Va. 659, 665 (1977)); *see id.* at 164 (equating restrictive covenants and negative easements). "[T]he burden is on [the party] who would enforce such [restrictions] to establish that the activity objected to is within their terms." *Sainani v. Belmont Glen Homeowners Ass'n, Inc.*, 297 Va. 714, 722 (2019) (second alteration in original) (quoting *Scott v. Walker*, 274 Va. 209, 213 (2007)). Virginia courts will enforce restrictions on the use of land

---

[10] Easements can be affirmative or negative. *United States v. Blackman*, 270 Va. 68, 76 (2005). An affirmative easement conveys a privilege to someone "to use the land of another (the 'servient tract') in a particular manner or for a particular purpose." *Id.* Negative easements, such as the one at issue in this case, "convey rights to demand that the owner of the servient tract refrain from certain otherwise permissible uses of his own land." *Id.* (citing *Bunn v. Offutt*, 216 Va. 681, 684 (1976)).

only if "'the intention of the parties is clear and the restrictions are reasonable' and 'if it is apparent from a reading of the whole instrument that the restrictions carry a certain meaning *by definite and necessary implication*.'" *Id.* at 723 (emphasis omitted and added) (quoting *Shepherd v. Conde*, 293 Va. 274, 288 (2017)).

"If the language in a deed creating an easement is unambiguous, courts should interpret the deed solely based on the deed's language." *Marble Techs.*, 290 Va. at 33. Where "[t]he language in the deed [conveying an easement] . . . is clear, unambiguous, and explicit[,] . . . 'a court called upon to construe such a deed should look no further than the four corners of the instrument under review.'" *Irby v. Roberts*, 256 Va. 324, 329 (1998) (first, third, and fifth alterations in original) (quoting *Langman*, 247 Va. at 498-99). In doing so, the Court strives "to give effect to the parties' intention as expressed by them in the words they have used." *Mount Aldie, LLC v. Land Tr. of Va., Inc.*, 293 Va. 190, 197 (2017) (quoting *Wetlands Am. Tr.*, 291 Va. at 160). "'[T]he whole of a deed and all its parts should be considered together' in order to determine the controlling intent." *Id.* (quoting *Wetlands Am. Tr.*, 291 Va. at 161). "When the deed, so construed, is plain and unambiguous, we are 'not at liberty to search for its meaning beyond the instrument itself.'" *Id.* (quoting *Wetlands Am. Tr.*, 291 Va. at 161). Nor may the Court use rules of construction to defeat the parties' "unambiguously expresse[d]" intent. *CNX Gas Co. v. Rasnake*, 287 Va. 163, 166-67 (2014). This preference for determining the parties' intent based on the four corners of the deed reduces the chance that a subsequent purchaser will be surprised by the scope of an encumbrance not clearly set out in the deed. *Cf.* Code § 55.1-407(A)(1) (providing that a contract involving real estate is void against subsequent bona fide purchasers unless "recorded in" the land records of the appropriate locality); *cf. also Cooper v. Kolberg*, 247 Va. 341, 348 n.1 (1994) (holding that in a "case involv[ing] an express easement

created by a deed whose terms govern the rights of the parties, . . . it is impermissible to imply an easement at odds with those terms").

Language is unambiguous "if its provisions are 'capable of only one reasonable construction.'" *Wetlands Am. Tr.*, 291 Va. at 161 (quoting *Clinch Valley Physicians, Inc. v. Garcia*, 243 Va. 286, 289 (1992)). Conversely, a deed is ambiguous "if its '"language admits of being understood in more than one way or refers to two or more things at the same time."'" *Id.* (quoting *Amos v. Coffey*, 228 Va. 88, 92 (1984)). A deed is not ambiguous, however, "merely because the parties disagree as to the meaning of the language employed." *Amos*, 228 Va. at 92 (quoting *Wilson v. Holyfield*, 227 Va. 184, 187 (1984)); *see Worsham v. Worsham*, 74 Va. App. 151, 171 (2022) (observing that "ambiguity is not created . . . even when 'courts in different jurisdictions' disagree" about the proper interpretation (quoting *Bartolomucci v. Fed. Ins.*, 289 Va. 361, 371 (2015))). Similarly, the fact that analysis is required does not, standing alone, suggest ambiguity. *See Wetlands Am. Tr.*, 291 Va. at 161 ("Each part of a deed '"must be construed with reference to the whole, so as to make it harmonious and sensible as a whole."'" (quoting *Hinton v. Hinton*, 209 Va. 544, 545-46 (1969))).

We conclude as a matter of law that the instant deed and incorporated plat are unambiguous and the appellees' pier does not violate the appellants' visual easement. The resubdivision plat unambiguously establishes the metes and bounds of the visual-easement area. "When a deed incorporates a plat by reference, the plat . . . establish[es] the metes and bounds of the property being conveyed." *Burdette v. Brush Mountain Ests., LLC*, 278 Va. 286, 298 (2009) (collecting cases); *see Auerbach v. County of Hanover*, 252 Va. 410, 414 (1996) ("[W]here a deed incorporates a plat by reference, 'that plat must be considered "part of the instrument itself."'" (quoting *Faison v. Union Camp Corp.*, 224 Va. 54, 59 (1982))). Here, the deed incorporates the plat and specifically provides that the visual-easement area is "more fully

described" in the plat itself. The plat depicts an area labeled as the "visual easement" and provides specific measurements for that area. According to the plat, the easement is a land-based easement ending at the approximate location of the bulkhead. As a notation on the plat makes clear, the bulkhead is not controlling and the "property line" is the "mean low water." Therefore, as defined by the incorporated plat, the visual-easement area is a land-based area terminating at the mean low-water line.

This construction of the easement as a land-based easement is bolstered by two additional provisions in the deed. *See Auerbach*, 252 Va. at 414 (holding that to "ascertain the intent of the grantor[]" of an easement, "the deed is to be examined as a whole and effect given to all of its terms and provisions not inconsistent with some principle of law or rule of property"). First, in listing the types of structures that are prohibited, the deed lists exclusively land-based structures, specifically "buildings, fences, walls, decks or storage sheds." Although this list is made "without limitation," the lack of any reference to water-based structures such as piers or wharfs is significant.[11] This is so because "[w]hen general words and specific words are grouped together, the general words are limited and qualified by the specific words." *Andrews v. Ring*, 266 Va. 311, 319 (2003) (describing the "maxim of *noscitur a sociis*").[12] Simply put, a phrase or word will be judged "by the company it keeps." *Cuccinelli v. Rector of Univ. of Va.*, 283 Va. 420, 432 (2012) (further describing the maxim). Second, the deed allows the appellants to "plant and maintain grass, trees, shrubs, flowers and other landscaping" in the easement area and "enjoy

---

[11] The items in this list stand in contrast to other language in the deed that specifically authorizes the appellants to repair or replace an "existing . . . dock," as long as they do not expand its footprint.

[12] Such principles apply not only to the construction of statutes but also to "legal instruments." *See Turner v. Reed*, 258 Va. 406, 410 (1999) (analyzing a testatrix's will in light of the doctrine of *ejusdem generis*); *see also Talbott v. Richmond & Danville R.R.*, 72 Va. (31 Gratt.) 685, 691 (1879) (applying the *noscitur a sociis* maxim to the construction of a deed).

and utilize the easement as an extension of the[ir] lawn and garden." Again, such language clearly identifies the easement area as being based on the land. *See Andrews*, 266 Va. at 319; *Cuccinelli*, 283 Va. at 432.

The additional language in the deed does not transform this straightforward interpretation into an ambiguous one. After identifying the area "more fully described" in the plat as the "[Joneses'] Visual Easement Area," the next paragraph of the deed begins, "[t]he restrictions imposed hereby on the use of the [Joneses'] Visual Easement Area . . . shall be as follows." Accordingly, the restrictions contained in that paragraph apply to the land-based easement described on the plat. The paragraph then provides that Tyler and her heirs and successors may not place structures on "the property encompassed within the *said easement property*, which includes the adjoining waters of Little Neck Creek *to* the mean low water line." (Emphases added). Use of the word "said" in this context means "aforementioned." *Said*, *Webster's Third New International Dictionary* (1993). Consequently, "said easement property" refers to the only aforementioned easement property—the area described on the plat. The deed "includes" the "adjoining waters of Little Neck Creek" "within" that property and explains that those waters extend to the mean low-water line. In other words, the adjoining waters have the same boundary as the easement area in which they are "include[d]."

The appellees' construction of "adjoining waters" aligns with this language, while the appellants' interpretation does not. The appellants' construction would place the adjoining waters on the other side of the mean low-water line, outside both the area shown on the plat and the appellees' property line. That construction conflicts with the deed's language that the area shown on the plat "includes" the adjoining waters. We reject the appellants' contention that the deed and incorporated plat carefully and specifically delineate the metes and bounds of the easement area only to expand that area to an unspecified extent.

Instead, we read "adjoining waters" to refer to whatever water may rise above the mean low-water line at any given time. This construction does not render the language about adjoining waters redundant, as the appellants allege. Rather, this approach views that language as merely clarifying how far the easement extends when the water line and the mean low-water line are not coextensive. Properly understood, the appellees own the "subaqueous bottomland that rests above the mean low-water mark." *Va. Marine Res. Comm'n v. Chincoteague Inn*, 287 Va. 371, 382 n.1 (2014) (citing Code § 28.2-1202). As such, water that rises above that mark may still be considered the "adjoining waters of Little Neck Creek" even when flowing directly above the appellees' property.

The trial court found that, to the extent the appellants intended the easement to cover the appellees' pier, they "certainly didn't take actions consistent with that intent." Although the trial court's overall analysis differed somewhat from our own, it ultimately recognized, as we do, that the deed's language does not prohibit the pier at issue. *See Taylor*, 300 Va. at 251 (permitting the application of "right result, different reason" doctrine when the "alternate grounds . . . are apparent from the record" (emphasis omitted) (quoting *Perry*, 280 Va. at 582)). "As a general rule, riparian rights are appurtenant to land, and [those rights] are included when the land is conveyed." *Burwell's Bay Improvement Ass'n v. Scott*, 277 Va. 325, 329 (2009) (citing *Waverly Water-Front & Improvement Co. v. White*, 97 Va. 176 (1899)). Riparian rights encompass the "right to build a pier or wharf out to navigable water, subject to any regulations of the state." *Thurston v. City of Portsmouth*, 205 Va. 909, 912 (1965) (quoting *Taylor v. Commonwealth*, 102 Va. 759, 773 (1904)); *see also* Code § 62.1-164 (allowing "[a]ny person owning land upon a watercourse" to construct a private wharf or pier). The default rule, therefore, is that the appellees' purchase of land adjacent to Little Neck Creek included the right to build a pier out to

navigable water. The appellants bore the burden of establishing that the deed restricted that right. *See Sainani*, 297 Va. at 723.

The deed contains no language clearly rebutting the default grant of riparian rights. The parties to the deed demonstrated that they knew how to restrict a dock or pier by restricting the expansion of the existing dock within Area A. *Cf. Burkholder v. Palisades Park Owners Ass'n*, 76 Va. App. 577, 589-90 (2023) (holding that a property association declaration failed to provide clear and express authority for a fee assessment where other language demonstrated that "[t]he drafters knew how to expressly authorize specific assessments when they wanted to"). By contrast, the deed's language concerning the visual easement contains no similar restriction. Rather, the deed, as a matter of law, unambiguously prevents the appellees from placing structures only on the land or whatever water may rise above the mean low-water line. It does not prevent the appellees from sinking pilings to support a pier *below* the mean low-water line, and it certainly does not do so by "definite and necessary implication." *See Sainani*, 297 Va. at 723 (quoting *Shepherd*, 293 Va. at 288). We therefore affirm the trial court's judgment.[13]

CONCLUSION

Because the plat incorporated into the deed fully describes the metes and bounds of the easement area, we conclude as a matter of law that the deed is unambiguous as to the extent of that area. The appellants have failed to prove that the appellees' pier violates the terms of the easement.

*Affirmed.*

---

[13] Code § 55.1-305 prohibits a servient estate's owner from placing structures "immediately adjacent" to an easement area that "unreasonably interfere[]" with the dominant estate owner's "enjoyment of the easement." The appellants' sole contention on appeal is that the pier fell *within* the adjoining waters referenced in the deed, a contention we have rejected. The appellants have not argued that the pier violated Code § 55.1-305 if it fell outside the easement area, and we do not consider that issue. *See Palmer v. Atl. Coast Pipeline, LLC*, 293 Va. 573, 580 (2017) (explaining that arguments not developed in the opening brief are waived due to the requirements of Rule 5:27); *Jeter v. Commonwealth*, 44 Va. App. 733, 740-41 (2005) (applying the same rationale based on Rule 5A:20(e)).